**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                              Plaintiff,

             -vs.-

2120 TIEBOUT LLC, 452 W 164 REALTY LLC,
148TH STREET LLC, 712 W 180 REALTY LLC,
554 W 148 LLC, SKYLINE 135TH LLC, 503 W 169
LLC, 561 W 144 REALTY LLC, 2705 & 2707
MORRIS LLC, 622 E 169 LLC, DOUGLAS
PETERSON, MAURICE ARLOS, MICHAEL
FORDHAM, MATTHEW L. MCGANN,
MATTHEW KLADNEY, AREMYE REALTY
CORPORATION, CARVER FEDERAL SAVINGS
BANK, the NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION & DEVELOPMENT,
the NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD and JOHN DOES #1
THROUGH JOHN DOE #343, inclusive, the names
of the last 343 defendants being fictitious, the true
names of said defendants being unknown to plaintiff,
it being intended to designate any occupants or
tenants of the mortgaged premises who are in default
in the payment of rent for which a proceeding is now
pending by the mortgagor and/or other persons or
parties having or claiming an interest in or lien upon
the mortgaged premises subordinate to that of the
mortgagee, if the aforesaid individual defendants are
living, and if any or all of said individual defendants
be dead, their heirs at law, next of kin, distributes,
executors, administrators, trustees, committees,
devisees, legatees and the assignees, lienors, creditors,
successors in interest of them, and generally all
persons having or claiming under, by, through or
against the said defendants named as a class, any
right, title or interest in or lien upon the premises
described in the complaint herein,

                              Defendants.

No.  1:23-cv-9445

**COMPLAINT**

## COMPLAINT

Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint against Defendants 2120 Tiebout LLC, 452 W 164 Realty LLC, 148th Street LLC, 712 W 180 Realty LLC, 554 W 148 LLC, Skyline 135th LLC, 503 W 169 LLC, 561 W 144 Realty LLC, 2705 & 2707 Morris LLC, 622 E 169 LLC, Douglas Peterson, Maurice Arlos, Michael Fordham, Matthew L. McGann, Matthew Kladney, Aremye Realty Corporation, Carver Federal Savings Bank, the New York City Department of Housing Preservation and Development, the New York City Environmental Control Board, and John Doe #1 through John Doe #343 (the "Complaint") alleges as follows:

## NATURE OF THE ACTION

1.      This is a mortgage foreclosure action on eleven properties located in Manhattan and the Bronx (the "Properties").[1]  The Properties are owned by various limited liability companies ("LLCs") controlled by and/or affiliated with City Skyline Realty (collectively, the "Borrower-Defendants").[2]  Plaintiff has mortgages on each of the Properties, which secure loans that have been in default since the beginning of 2023.  With this action, Plaintiff seeks foreclosures of the Properties as its lawful remedy under the governing loan documents, as well as money judgments against Borrower-Defendants and Guarantor-Defendants (defined *infra*).

---

[1] The addresses of the Properties are: 2705 Morris Avenue, Bronx, NY 10468; 561 W 144th Street, New York, NY 10031; 622 E 169th Street, Bronx, NY 10456; 2707 Morris Avenue, Bronx, NY 10468; 2120-2126 Tiebout Avenue, Bronx, NY 10457; 452 W 164th St, New York, NY 10032; 503 W 169th St, New York, NY 10032; 505 W 135th St, New York, NY 10031; 522 W 148th St, New York, NY 10032; 554 W 148th St, New York, NY 10031; 712 W 180th St, New York, NY 10033.

[2] The Borrower-Defendants consist of: 2120 Tiebout LLC; 452 W 164 Realty LLC; 148th Street LLC; 712 W 180 Realty LLC; 554 W 148 LLC; Skyline 135th LLC; 503 W 169 LLC; 561 W 144 Realty, LLC; 2705 & 2707 MORRIS LLC; and 622 E 169, LLC.

## PARTIES

I.     **PLAINTIFF**

2.     Plaintiff is a federally chartered corporation organized and existing under the laws of the United States, 12 U.S.C. §1716 *et seq*., with its principal place of business in Washington, D.C., with offices located at Midtown Center, 1100 15th Street NW, Washington, D.C. 20005.

3.     Plaintiff Fannie Mae is the current owner and holder of the Notes and Mortgages referenced in this Complaint.

4.     Fannie Mae is a government-sponsored enterprise created by Congress to enhance the nation's housing finance market.  Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality and affordable rental housing.

5.     Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency ("FHFA"), which is an independent agency of the United States created in 2008 to supervise certain government sponsored enterprises including Fannie Mae.  *See* 12 U.S.C. § 4511 et seq.  Among other powers, Congress authorized the Director of FHFA to place Fannie Mae into conservatorship under certain statutorily defined conditions, which the Director did in 2008.  As Conservator, FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due Fannie Mae.  FHFA's ability to exercise its statutory powers and functions as Conservator is protected by federal law.  *See, e.g.*, 12 U.S.C. § 4617(f).

## II.  DEFENDANTS

### A.  Borrower-Defendants

6.  Upon information and belief, Defendant 2120 Tiebout LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

7.  Upon information and belief, Defendant 2120 Tiebout LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Douglas Peterson, Maurice Arlos, Adam Ghomy, Matthew Haines, Michael Wehner, Kevin Peterson, Michael and Rie Denning, Mark Werrett, Seth Miller, Fred Miller, Joe Mancuso, and Morris Arlos.

8.  Upon information and belief, Defendant 452 W 164 Realty LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

9.  Upon information and belief, Defendant 452 W 164 Realty LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Douglas Peterson, Maurice Arlos, Ira Nathel, Sheldon Nathel, Kyle Boice, Kamil Radecki, Colin Cropper, David Crouch, Karena Wells, Tanner Tew, Kevin Peterson IRA, Nicol Peterson IRA, Kirt Melling, Joseph Mancuso, Chad Tew, Clay Barth, Timothy T. Taylor, Samantha Carney, Steven Zetterquist, Timothy J. Taylor, Brett Duckworth, Vladimir Favilukis, Mike Wiley, Thomas M Cohen Rev Trust, Matthew Haines, and FAS Trust/Adam Ghomy.

10.  Upon information and belief, Defendant 148th Street LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

11.  Upon information and belief, Defendant 148th Street LLC is a New York limited liability company comprised of the following members, none of whom are citizens of Washington, D.C.: Maurice Arlos, Michael Fordham, and Peterson Capital II LLC.  Peterson Capital II LLC is

a New York limited liability company comprised of the following members: Douglas Peterson and Kevin Peterson.

12.     Upon information and belief, Defendant 712 W 180 Realty LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

13.     Upon information and belief, Defendant 712 W 180 Realty LLC is comprised of the following member, which is not a citizen of Washington, DC: 48 St Nick LLC.  In turn, 48 St Nick LLC is a New York limited liability company comprised of the following members, none of whom are citizens of Washington, DC: Douglas Peterson, Maurice Arlos, FAS Trust/Adam Ghomy, Thomas Cohen, Alex Perez, Colin Cropper, Kevin Peterson, Matthew Haines, Mike Wehner, Karena Wells, Harlan Eplan, Mike Chan—MYC Capital LLC, David Nguyen, Brian Jakeway, and Jonathan Uejlo.  Upon information and belief, the sole member of MYC Capital LLC, a New York limited liability company, is Mike Chan, who is not a citizen of Washington, DC.

14.     Upon information and belief, Defendant 554 W 148 LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

15.     Upon information and belief, Defendant 554 W 148 LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Brigham A. Fordham, Adam Ghomy, Ryan Slack, Michael D. Wehner, Maurice B. Arlos, Michael R. Fordham, Douglas E. Peterson, and Lincoln Managing Partners, LLC.  Lincoln Managing Partners LLC is a New York limited liability company comprised of the following members: Douglas Peterson, Michael R. Fordham, and Maurice Arlos.

16.     Upon information and belief, Defendant Skyline 135th LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

17.     Upon information and belief, Defendant Skyline 135th LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Douglas Peterson, Maurice Arlos, DKT Investment Company LLC, Dave Tullis, Joe Mancuso, Sahira LLC/Geetanjali Misra, Gulab Stone LLC/Ishan Chabra, Morris Silver, Timothy Taylor, Brett Duckworth, Gigi Parke, Colin Cropper, Steven Evans, Brent Gordon, Michael Wiley, Loren Washburn, Thomas M Cohen Rev Trust, Hainsley New York LLC/Matthew Haines, FAS Trust/Adam Ghomy, and Morris Arlos. Upon information and belief, the sole member of DKT Investment Company LLC is Dave Tullis. Upon information and belief, the sole member of Sahira LLC, a New York limited liability company, is Geetanjali Misra.  Upon information and belief, the sole member of Gulab Stone LLC, a New York limited liability company, is Ishan Chabra.  Upon information and belief, the sole member of Hainsley New York LLC, a Florida limited liability company, is Matthew Haines.

18.     Upon information and belief, Defendant 503 W 169 LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

19.     Upon information and belief, Defendant 503 W 169 LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Doug Peterson, Michael Fordham, Adam Ghomy, Brandon Dalling, Sheldon Nathel, Ira Nathel, Colin Cropper, Mike Wiley, and Eric Reeves.

20.     Upon information and belief, Defendant 561 W 144 Realty LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

21.     Upon information and belief, Defendant 561 W 144 Realty LLC is comprised of the following members, none of whom are citizens of Washington, DC: 304 W 151 LLC.  In turn, 304 W 151 LLC is made up of the following members: Maurice Arlos, Douglas Peterson, Adam Ghomy, Matthew Haines, Michael Wehner, Karena Wells, and Kevin Peterson.

22.     Upon information and belief, Defendant 2705 & 2707 Morris LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

23.     Upon information and belief, Defendant 2705 & 2707 Morris LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Douglas Peterson, Maurice Arlos, Aaron Lund, Scott Burk, Jay Severson, Alan Rindlisbacher, Nathan Liddle, Brandon Duke, Randall Mack, Robert Brinton, Elie Reiss, Joseph Hale, James Mack, Carl LeSueur, Timothy Taylor, Kevin Peterson, Mark Werrett, Michael Denning, David Couch, Brian Waterfall, Colin Cropper, Benjamin Sauter, Eitan Schwartz, Matthew Murphy, Robert DeLuccia, Oriya Foger, Joseph Mancuso, Martin Edmondson, and FAS Trust/Adam Ghomy.

24.     Upon information and belief, Defendant 622 E 169, LLC is a New York limited liability company located at 507 W 139th Street, Suite A, New York, New York 10031.

25.     Upon information and belief, Defendant 622 E 169, LLC is comprised of the following members, none of whom are citizens of Washington, D.C.: Michael Fordham Jr., Douglas Peterson, Kevin Peterson, The Fordham Living Trust U/A, Rick Poulton, Tim & Tamara Taylor, Harold Noyce, Michael Fordham Sr., Allan & Laurel Beezer, Christopher Fordham, Mark Keeton, Fremont Investment LLC, Steve & Sandra Zetterquist, Jake Wannamaker, Peterson Manager 622 LLC, and Fordham Manager LLC.  Upon information and belief, Fremont Investment LLC has no member that are citizens of Washington D.C.  Peterson Manager 622 LLC is comprised of sole member Douglas Peterson.  Fordham Manager 622 LLC is comprised of sole member Michael Fordham Jr.

**B.     Guarantor Defendants**

26.     Upon information and belief, Defendant Douglas Peterson is an individual currently residing in Utah.

27.     Upon information and belief, Defendant Maurice Arlos is an individual currently residing in New York who is also referred to as Morris Arlos.

28.     Upon information and belief, Defendant Michael Fordham is an individual currently residing in Utah.

**C.    Junior Lienholder Defendants**

29.     Upon information and belief, Defendant Matthew L. McGann is an individual residing in New York.

30.     Upon information and belief, Defendant Matthew Kladney is an individual residing in New York.

31.     Upon information and belief, Defendant Aremye Realty Corporation is a New York business corporation located at 408 Jay St, Brooklyn, NY 11201.

32.     Upon information and belief, Defendant Carver Federal Savings Bank is a Delaware business corporation with headquarters located at 1825 Park Avenue, New York, NY 10035.

33.     Upon information and belief, Defendant New York City Department of Housing Preservation and Development is a New York agency with an office located at 100 Gold St, New York, NY 10038.

34.     Upon information and belief, Defendant New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, is a New York City agency with an office located at 9 Bond Street, 7th Floor, Brooklyn, New York 11201.

35.     Defendants "JOHN DOES #1-343" are unknown persons or entities joined as party defendants because they may be tenants and persons in possession of the Properties or have some interest in and to the Properties (including that of judgment creditors) inferior and subordinate to

that of Plaintiff or may be persons who hold or have collected the rents, issues and profits relating to or arising from the Properties.

## JURISDICTION AND VENUE

36.     This action seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Housing and Economic Recovery Act, 12 U.S.C. § 4617(j)(3) and (4). As such, this Court has jurisdiction under 28 U.S.C. § 1331 because the claims asserted arise under the laws of the United States.

37.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims arising under New York law, because those claims are related to Fannie Mae's claims under federal law, form part of the same case or controversy, and are derived from a common nucleus of operative facts.

38.     This Court also has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value, exclusive of interest and costs, and is between citizens of different states.

39.     For purposes of diversity jurisdiction, Plaintiff is a citizen of Washington, D.C.  12 U.S.C. § 1717(a)(2)(B).

40.     For purposes of diversity jurisdiction, upon information and belief, neither the following defendants nor any member thereof (or member of such member) are citizens of Washington, D.C.: 2120 Tiebout LLC, 452 W 164 Realty LLC, 148th Street LLC, 712 W 180 Realty LLC, 554 W 148 LLC, Skyline 135th LLC, 503 W 169 LLC, 561 W 144 Realty LLC, 2705 & 2707 Morris LLC, 622 E 169 LLC, Douglas Peterson, Maurice Arlos, Michael Fordham, Matthew L. McGann, Matthew Kladney, Aremye Realty Corporation, Carver Federal Savings

Bank, the New York City Department of Housing Preservation and Development, and the New York City Environmental Control Board.

41.     This Court has personal jurisdiction over 2120 Tiebout LLC, 452 W 164 Realty LLC, 148th Street LLC, 712 W 180 Realty LLC, 554 W 148 LLC, Skyline 135th LLC, 503 W 169 LLC, 561 W 144 Realty LLC, 2705 & 2707 Morris LLC, and 622 E 169 LLC because, *inter alia*, these defendants agreed to submit to personal jurisdiction in New York State according to the terms of the Notes, Loan Agreements, and Mortgage Agreements (defined *infra*).

42.     This Court has personal jurisdiction over Douglas Peterson, Maurice Arlos, and Michael Fordham because, *inter alia*, they agreed to submit to personal jurisdiction in New York State according to the terms of the Guaranties (defined *infra*).

43.     Upon information and belief, this Court has personal jurisdiction over Matthew L. McGann and Matthew Kladney because they reside in New York.

44.     Upon information and belief, this Court has personal jurisdiction over Aremye Realty Corporation because it is a New York corporation with a principal place of business in New York State.

45.     Upon information and belief, this Court has personal jurisdiction over Carver Federal Savings Bank because its principal place of business is in New York State.

46.     This Court has personal jurisdiction over New York City Department of Housing Preservation and Development because it is a New York City agency with a principal place of business in New York State.

47.     This Court has personal jurisdiction over New York City Environmental Control Board, also known as the Office of Administrative Trials and Hearings, because it is a New York City agency with a principal place of business in New York State.

48.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the properties that are the subject of this action are located in the Southern District of New York.

49.     Venue is also proper pursuant to 28 U.S.C. § 1391, because this dispute arises out of the terms of agreements signed by the parties that are governed by New York law and contain forum selection clauses designating this Court as a proper venue.

## FACTUAL ALLEGATIONS

## I.     The Mortgages, Loan Documents, and Loan Assignments to Plaintiff

50.     Each mortgage loan for the Properties is governed by certain loan documents, as described below.  The terms of these loan documents are all substantially identical to one another. Collectively, these Notes, Loan Agreements, Mortgage Agreements, Guaranties, and all attachments thereto and assignments thereof are referred to as the "Loan Documents."

51.     The particular financial terms of each mortgage loan are spelled out in the Schedules to each Loan Agreement.

52.     Each mortgage loan is guaranteed by Douglas Peterson, Maurice Arlos, and/or Michael Fordham (the "Guarantor-Defendants").

53.     Defendant 2120 Tiebout LLC owes an outstanding principal sum of $11,925,000.00 on its mortgage loan; Defendant 2705 & 2707 Morris LLC owes an outstanding principal sum of $4,562,967.94 on the mortgage loan for the 2707 Morris Property and $4,457,257.60 on the mortgage loan for the 2705 Morris Property; Defendant 452 W 164 Realty LLC owes an outstanding principal sum of $3,194,488.41 on its mortgage loan; Defendant 503 W 169 LLC owes an outstanding principal sum of $3,504,302.06 on its mortgage loan; Defendant Skyline 135th LLC owes an outstanding principal sum of $5,893,000.00 on its mortgage loan; Defendant 148th Street LLC owes an outstanding principal sum of $6,609,000.00 on its mortgage loan; Defendant 554 W

148 LLC owes an outstanding principal sum of $7,977,579.06 on its mortgage loan; Defendant 561 W 144 Realty LLC owes an outstanding principal sum of $5,959,047.06 on its mortgage loan; Defendant 622 E 169 LLC owes an outstanding principal sum of $4,539,417.84 on its mortgage loan; and Defendant 712 W 180 Realty LLC owes an outstanding principal sum of $5,594,748.49 on its mortgage loan.

54.   Collectively, the mortgage loans total $72,317,351.24 in outstanding principal indebtedness due to Plaintiff.

### A. *2120 Tiebout LLC*

55.   On or about December 27, 2019, 2120 Tiebout LLC executed an Amended and Restated Multifamily Note (the "Tiebout Avenue Note") for the benefit of Arbor Commercial Funding I, LLC ("Arbor"), the original lender under the Note.  Under the terms of the Tiebout Avenue Note, the Borrower-Defendant agreed to pay to the holder of the Tiebout Avenue Note (the "Tiebout Avenue Lender") the sum of $11,925,000.00 plus interest.  A true and correct copy of the Tiebout Avenue Note is annexed as **Exhibit A** and incorporated herein.

56.   On or about December 27, 2019, 2120 Tiebout LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "Tiebout Avenue Loan Agreement").  A true and correct copy of the Tiebout Avenue Loan Agreement is annexed as **Exhibit B** and incorporated herein.  Under Schedule 2 of the Tiebout Avenue Loan Agreement, 2120 Tiebout LLC was required to make monthly payments on the loan to the Tiebout Avenue Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "Tiebout Avenue Monthly Payments").

57.   In order to secure its indebtedness under the Note, on or about December 18, 2019, 2120 Tiebout LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and

Rents, Security Agreement, and Fixture Filing (the "Tiebout Avenue Mortgage Agreement," and together with the Teibout Avenue Note and the Tiebout Avenue Loan Agreement, the "Tiebout Avenue Loan Documents").  A true and correct copy of the Tiebout Avenue Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on February 12, 2020, File No. 2020000094285, is annexed as **Exhibit C** and incorporated herein. Under the Tiebout Avenue Mortgage Agreement, 2120 Tiebout LLC mortgaged to Arbor the Tiebout Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "Tiebout Avenue Mortgage").

58.    On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "Tiebout Avenue Guaranty").  A true and correct copy of the Tiebout Avenue Guaranty is annexed as **Exhibit D** and incorporated herein.

59.    On December 27, 2019, Arbor assigned the Tiebout Avenue Mortgage Agreement and Tiebout Avenue Note to Plaintiff (the "Tiebout Avenue Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 12, 2020 under Control Number 2020000094287.  A true and correct copy of the Tiebout Avenue Mortgage and Note Assignment is annexed as **Exhibit E** and incorporated herein.

60.    Plaintiff is in possession of the original Tiebout Avenue Note, indorsed in blank, which is attached hereto as Ex. A.  By virtue of Plaintiff's possession of the original Tiebout Avenue Note, as well as the Tiebout Avenue Mortgage and Note Assignment, Plaintiff became and

is still the mortgagee on, and owner and holder of, the Tiebout Avenue Note and the Tiebout Avenue Mortgage Agreement.

61.   On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the Tiebout Avenue Property to Plaintiff (the "Tiebout Avenue Collateral Agreements Assignment"), which assigned agreements including the Tiebout Avenue Loan Agreement, the Tiebout Avenue Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the Tiebout Avenue Collateral Agreements Assignment is annexed as **Exhibit F** and incorporated herein.

### B. *2705 & 2707 Morris LLC*

62.   2705 & 2707 Morris LLC is the owner of two properties at issue in this foreclosure.

#### a. *2705 Morris Ave Property*

63.   On or about December 27, 2019, 2705 & 2707 Morris LLC executed a Consolidated, Amended and Restated Multifamily Note (the "2705 Morris Note") for the benefit of Arbor, the original lender under the 2705 Morris Note. Under the terms of the 2705 Morris Note, 2705 & 2707 Morris LLC agreed to pay to the holder of the 2705 Morris Note (the "2705 Morris Lender") the sum of $4,725,000.00 plus interest. A true and correct copy of the 2705 Morris Note is annexed as **Exhibit G** and incorporated herein.

64.   On or about December 27, 2019, 2705 & 2707 Morris LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "2705 Morris Loan Agreement"). A true and correct copy of the 2705 Morris Loan Agreement is annexed as **Exhibit H** and incorporated herein. Under Schedule 2 of the 2705 Morris Loan Agreement, 2705 & 2707 Morris LLC was required to make monthly payments on the loan to the 2705 Morris Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "2705 Morris Monthly Payments").

65.    In order to secure its indebtedness under the 2705 Morris Note, on or about December 18, 2019, 2705 & 2707 Morris LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "2705 Morris Mortgage Agreement", and together with the 2705 Morris Note and the 2705 Morris Loan Agreement, the "2705 Morris Loan Documents").  A true and correct copy of the 2705 Morris Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 9, 2020, File No. 2020000087859, is annexed as **Exhibit I** and incorporated herein.  Under the 2705 Morris Mortgage Agreement, 2705 & 2707 Morris LLC mortgaged to Arbor the 2705 Morris Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "2705 Morris Mortgage").

66.    On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "2705 Morris Guaranty").  A true and correct copy of the 2705 Morris Guaranty is annexed as **Exhibit J** and incorporated herein.

67.    On December 27, 2019, Arbor assigned the 2707 Morris Mortgage Agreement and 2707 Morris Note to Plaintiff (the "2705 Morris Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 9, 2020 under Control Number 2020000087861.  A true and correct copy of the 2705 Morris Mortgage and Note Assignment is annexed as **Exhibit K** and incorporated herein.

68.    Plaintiff is in possession of the original 2705 Morris Note, indorsed in blank, which is attached hereto as Ex. G.  By virtue of Plaintiff's possession of the original 2705 Morris Note, as well as the 2705 Morris Mortgage and Note Assignment, Plaintiff became and is still the

mortgagee on, and owner and holder of, the 2705 Morris Note and the 2705 Morris Mortgage Agreement.

69.    On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 2705 Morris Property to Plaintiff (the "2705 Morris Collateral Agreements Assignment"), which assigned agreements including the 2705 Morris Loan Agreement, the 2705 Morris Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."   A true and correct copy of the 2705 Morris Collateral Agreements Assignment is annexed as **Exhibit L** and incorporated herein.

### b.   2707 Morris Ave Property

70.    On or about December 27, 2019, 2705 & 2707 Morris LLC executed a Consolidated, Amended and Restated Multifamily Note (the "2707 Morris Note") for the benefit of Arbor, the original lender under the 2707 Morris Note.  Under the terms of the 2707 Morris Note, 2705 & 2707 Morris LLC agreed to pay to the holder of the 2707 Morris Note (the "2707 Morris Lender") the sum of $4,836,000.00 plus interest.  A true and correct copy of the 2707 Morris Note is annexed as **Exhibit M** and incorporated herein.

71.    On or about December 27, 2019, 2705 & 2707 Morris LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "2707 Morris Loan Agreement").  A true and correct copy of the 2707 Morris Loan Agreement is annexed as **Exhibit N** and incorporated herein. Under Schedule 2 of the 2707 Morris Loan Agreement, 2705 & 2707 Morris LLC was required to make monthly payments on the loan to the 2707 Morris Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "2707 Morris Monthly Payments").

72.    In order to secure its indebtedness under the Note, on or about December 18, 2019, 2705 & 2707 Morris LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases

and Rents, Security Agreement, and Fixture Filing (the "2707 Morris Mortgage Agreement", and together with the 2707 Morris Note and the 2707 Morris Loan Agreement, the "2707 Morris Loan Documents").  A true and correct copy of the 2707 Morris Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 16, 2020, File No. 2020000096278, is annexed as **Exhibit O** and incorporated herein.  Under the 2707 Morris Mortgage Agreement, 2705 & 2707 Morris LLC mortgaged to Arbor the 2707 Morris Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "2707 Morris Mortgage").

73.    On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "2707 Morris Guaranty").  A true and correct copy of the 2707 Morris Guaranty is annexed as **Exhibit P** and incorporated herein.

74.    On December 27, 2019, Arbor assigned the 2707 Morris Mortgage Agreement and 2707 Morris Note to Plaintiff (the "2707 Morris Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 16, 2020 under Control Number 2020000096277.  A true and correct copy of the 2707 Morris Mortgage and Note Assignment is annexed as **Exhibit Q** and incorporated herein.

75.    Plaintiff is in possession of the original 2707 Morris Note, indorsed in blank, which is attached hereto as Ex. M.  By virtue of Plaintiff's possession of the original 2707 Morris Note, as well as the 2707 Morris Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 2707 Morris Note and the 2707 Morris Mortgage Agreement.

76.    On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 2707 Morris Property to Plaintiff (the "2707 Morris Collateral Agreements Assignment"), which assigned agreements including the 2707 Morris Loan Agreement, the 2707 Morris Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."   A true and correct copy of the 2707 Morris Collateral Agreements Assignment is annexed as **Exhibit R** and incorporated herein.

C.   *452 W 164 Realty LLC*

77.    On or about December 27, 2019, 452 W 164 Realty LLC executed an Amended and Restated Multifamily Note (the "452 West 164th Street Note") for the benefit of Arbor, the original lender under the 452 West 164th Street Note.   Under the terms of the 452 West 164th Street Note, 452 W 164 Realty LLC agreed to pay to the holder of the 452 West 164th Street Note (the "452 West 164th Street Lender") the sum of $3,399,000.00 plus interest.   A true and correct copy of the 452 West 164th Street Note is annexed as **Exhibit S** and incorporated herein.

78.    On or about December 27, 2019, 452 W 164 Realty LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "452 West 164th Street Loan Agreement").   A true and correct copy of the 452 West 164th Street Loan Agreement is annexed as **Exhibit T** and incorporated herein.   Under Schedule 2 of the 452 West 164th Street Loan Agreement, 452 W 164 Realty LLC was required to make monthly payments on the loan to the 452 West 164th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "452 West 164th Street Monthly Payments").

79.    In order to secure its indebtedness under the 452 West 164th Street Note, on or about December 27, 2019, 452 W 164 Realty LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "452 West 164th

Street Mortgage Agreement", and together with the 452 West 164th Street Note and the 452 West 164th Street Loan Agreement, the "452 West 164th Street Loan Documents").  A true and correct copy of the 452 West 164th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on February 21, 2020, File No. 2020000067901, is annexed as **Exhibit U** and incorporated herein.  Under the 452 West 164th Street Mortgage Agreement, 452 W 164 Realty LLC mortgaged to Arbor the 452 W 164th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "452 West 164th Street Mortgage").

80.   On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "452 West 164th Street Guaranty").  A true and correct copy of the 452 West 164th Street Guaranty is annexed as **Exhibit V** and incorporated herein.

81.   On December 27, 2019, Arbor assigned the 452 West 164th Street Mortgage Agreement and 452 West 164th Street Note to Plaintiff (the " 452 West 164th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register  on February 21, 2020 under Control Number 2020000067900.  A true and correct copy of the 452 West 164th Street Mortgage and Note Assignment is annexed as **Exhibit W** and incorporated herein.

82.   Plaintiff is in possession of the original 452 West 164th Street Note, indorsed in blank, which is attached hereto as Ex. S.  By virtue of Plaintiff's possession of the original 452 West 164th Street Note, as well as the 452 West 164th Street Mortgage and Note Assignment,

Plaintiff became and is still the mortgagee on, and owner and holder of, the 452 West 164th Street Note and the 452 West 164th Street Mortgage Agreement.

83.   On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 452 West 164th Property to Plaintiff (the "452 West 164th Street Collateral Agreements Assignment"), which assigned agreements including the 452 West 164th Street Agreement, the 452 West 164th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the 452 West 164th Street Collateral Agreements Assignment is annexed as **Exhibit X** and incorporated herein.

> D.   *503 W 169 LLC*

84.   On or about December 27, 2019, 503 W 169 LLC executed an Amended and Restated Multifamily Note (the "503 West 169th Street Note") for the benefit of Arbor, the original lender under the 503 West 169th Street Note. Under the terms of the 503 West 169th Street Note, the 503 W 169 LLC agreed to pay to the holder of the Note (the "503 West 169th Street Lender") the sum of $3,767,000.00 plus interest. A true and correct copy of the 503 West 169th Street Note is annexed as **Exhibit Y** and incorporated herein.

85.   On or about December 27, 2019, 503 W 169 LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "503 West 169th Street Loan Agreement", and together with the 503 West 169th Street Note and the 503 West 169th Street Loan Agreement, the "503 West 169th Street Loan Documents"). A true and correct copy of the 503 West 169th Street Loan Agreement is annexed as **Exhibit Z** and incorporated herein. Under Schedule 2 of the 503 West 169th Street Loan Agreement, 503 W 169 LLC was required to make monthly payments on the loan to the 503 West 169th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "503 West 169th Street Monthly Payments").

86.     In order to secure its indebtedness under the 503 West 169th Street Note, on or about December 27, 2019, 503 W 169 LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "503 West 169th Street Mortgage Agreement").  A true and correct copy of the 503 West 169th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on February 26, 2020, File No. 2020000073570, is annexed as **Exhibit AA** and incorporated herein.  Under the 503 West 169th Street Mortgage Agreement, 503 W 169 LLC mortgaged to Arbor the 503 W 169th  Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "503 West 169th Street Mortgage").

87.     On December 27, 2019, Douglas Peterson and Michael Fordham executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "503 West 169th Street Guaranty").  A true and correct copy of the 503 West 169th Street Guaranty is annexed as **Exhibit AB** and incorporated herein.

88.     On December 27, 2019, Arbor assigned the 503 West 169th Street Mortgage Agreement and 503 West 169th Street Note to Plaintiff (the "503 West 169th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register  on February 26, 2020 under Control Number 2020000073569.  A true and correct copy of the 503 West 169th Street Mortgage and Note Assignment is annexed as **Exhibit AC** and incorporated herein.

89.     Plaintiff is in possession of the original 503 West 169th Street Note, indorsed in blank, which is attached hereto as Ex. Y.  By virtue of Plaintiff's possession of the original 503 West 169th Street Note, as well as the 503 West 169th Street Mortgage and Note Assignment,

Plaintiff became and is still the mortgagee on, and owner and holder of, the 503 West 169th Street Note and the 503 West 169th Street Mortgage Agreement.

90.    On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 503 West 169th Property to Plaintiff (the "503 West 169th Street Collateral Agreements Assignment"), which assigned agreements including the 503 West 169th Street Agreement, the 503 West 169th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the 503 West 169th Street Collateral Agreements Assignment is annexed as **Exhibit AD** and incorporated herein.

### E.   *Skyline 135th LLC*

91.    On or about December 27, 2019, Skyline 135th LLC executed an Amended and Restated Multifamily Note (the "505 West 135th Street Note") for the benefit of Arbor, the original lender under the 505 West 135th Street Note. Under the terms of the 505 West 135th Street Note, Skyline 135th LLC agreed to pay to the holder of the 505 West 135th Street Note (the "505 West 135th Street Lender") the sum of $5,893,000.00 plus interest. A true and correct copy of the 505 West 135th Street Note is annexed as **Exhibit AE** and incorporated herein.

92.    On or about December 27, 2019, Skyline 135th LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "505 West 135th Street Loan Agreement"). A true and correct copy of the 505 West 135th Street Loan Agreement is annexed as **Exhibit AF** and incorporated herein. Under Schedule 2 of the 505 West 135th Street Loan Agreement, Skyline 135th LLC was required to make monthly payments on the loan to the 505 West 135th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "505 West 135th Street Monthly Payments").

93.     In order to secure its indebtedness under the 505 West 135th Street Note, on or about December 27, 2019, Skyline 135th LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "505 West 135th Street Mortgage Agreement", and together with the 505 West 135th Street Note and the 505 West 135th Street Loan Agreement, the "505 West 135th Street Loan Documents").  A true and correct copy of the 505 West 135th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 6, 2020, File No. 2020000087370, is annexed as **Exhibit AG** and incorporated herein.  Under the 505 West 135th Street Mortgage Agreement, Skyline 135th LLC mortgaged to Arbor the 505 W 135th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "505 West 135th Street Mortgage").

94.     On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "505 West 135th Street Guaranty").  A true and correct copy of the 505 West 135th Street Guaranty is annexed as **Exhibit AH** and incorporated herein.

95.     On December 27, 2019, Arbor assigned the Mortgage Agreement and Note to Plaintiff (the "505 West 135th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 6, 2020 under Control Number 2020000087369.  A true and correct copy of the 505 West 135th Street Mortgage and Note Assignment is annexed as **Exhibit AI** and incorporated herein.

96.     Plaintiff is in possession of the original 505 West 135th Street Note, indorsed in blank, which is attached hereto as Ex. AE.  By virtue of Plaintiff's possession of the original 505

West 135th Street Note, as well as the 505 West 135th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 505 West 135th Street Note and the 505 West 135th Street Mortgage Agreement.

97. On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 505 West 135th Property to Plaintiff (the "505 West 135th Street Collateral Agreements Assignment"), which assigned agreements including the 505 West 135th Street Agreement, the 505 West 135th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the 505 West 135th Street Collateral Agreements Assignment is annexed as **Exhibit AJ** and incorporated herein.

### F.  *148th Street LLC*

98. On or about December 27, 2019, 148th Street LLC executed an Amended and Restated Multifamily Note (the "522 West 148th Street Note") for the benefit of Arbor, the original lender under the 522 West 148th Street Note. Under the terms of the 522 West 148th Street Note, 148th Street LLC agreed to pay to the holder of the 522 West 148th Street Note (the "522 West 148th Street Lender") the sum of $6,609,000.00 plus interest. A true and correct copy of the 522 West 148th Street Note is annexed as **Exhibit AK** and incorporated herein.

99. On or about December 27, 2019, 148th Street LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "522 West 148th Street Loan Agreement"). A true and correct copy of the 522 West 148th Street Loan Agreement is annexed as **Exhibit AL** and incorporated herein. Under Schedule 2 of the 522 West 148th Street Loan Agreement, 148th Street LLC was required to make monthly payments on the loan to the 522 West 148th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "522 West 148th Street Monthly Payments").

100.  In order to secure its indebtedness under the Note, on or about December 27, 2019, 148th Street LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "522 West 148th Street Mortgage Agreement", and together with the 522 West 148th Street Note and the 522 West 148th Street Loan Agreement, the "522 West 148th Street Loan Documents").  A true and correct copy of the 522 West 148th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on February 3, 2020, File No. 2020000042687, is annexed as **Exhibit AM** and incorporated herein.  Under the 522 West 148th Street Mortgage Agreement, 148th Street LLC mortgaged to Arbor the 522 W 148th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "522 West 148th Street Mortgage").

101.  On December 27, 2019, Douglas Peterson, Maurice Arlos, and Michael Fordham executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "522 West 148th Street Guaranty").  A true and correct copy of the 522 West 148th Street Guaranty is annexed as **Exhibit AN** and incorporated herein.

102.  On December 27, 2019, Arbor assigned the 522 West 148th Street Mortgage Agreement and 522 West 148th Street Note to Plaintiff (the "522 West 148th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on February 3, 2020 under Control Number 2020000042685. A true and correct copy of the 522 West 148th Street Mortgage and Note Assignment is annexed as **Exhibit AO** and incorporated herein.

103.  Plaintiff is in possession of the original 522 West 148th Street Note, indorsed in blank, which is attached hereto as Ex. AK.  By virtue of Plaintiff's possession of the original 522

West 148th Street Note, as well as the 522 West 148th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 522 West 148th Street Note and the 522 West 148th Street Mortgage Agreement.

104. On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 522 West 148th Property to Plaintiff (the "522 West 148th Street Collateral Agreements Assignment"), which assigned agreements including the 522 West 148th Street Agreement, the 522 West 148th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the 522 West 148th Street Collateral Agreements Assignment is annexed as **Exhibit AP** and incorporated herein.

G. *554 W 148 LLC*

105. On or about December 27, 2019, 554 W 148 LLC executed an Amended and Restated Multifamily Note (the "554 West 148th Street Note") for the benefit of Arbor, the original lender under the 554 West 148th Street Note. Under the terms of the 554 West 148th Street Note, 554 W 148 LLC agreed to pay to the holder of the 554 West 148th Street Note (the "554 West 148th Street Lender") the sum of $8,003,000.00 plus interest. A true and correct copy of the 554 West 148th Street Note is annexed as **Exhibit AQ** and incorporated herein.

106. On or about December 27, 2019, 554 W 148 LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "554 West 148th Street Loan Agreement"). A true and correct copy of the 554 West 148th Street Loan Agreement is annexed as **Exhibit AR** and incorporated herein. Under Schedule 2 of the 554 West 148th Street Loan Agreement, 554 W 148 LLC was required to make monthly payments on the loan to the 554 West 148th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "554 West 148th Street Monthly Payments").

107.  In order to secure its indebtedness under the 554 West 148th Street Note, on or about December 27, 2019, 554 W 148 LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "554 West 148th Street Mortgage Agreement", and together with the 554 West 148th Street Note and the 554 West 148th Street Loan Agreement, the "554 West 148th Street Loan Documents").  A true and correct copy of the 554 West 148th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on February 3, 2020, File No. 2020000042693, is annexed as **Exhibit AS** and incorporated herein.  Under the 554 West 148th Street Mortgage Agreement, 554 W 148 LLC mortgaged to Arbor the 554 W 148th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "554 West 148th Street Mortgage").

108.  On December 27, 2019, Douglas Peterson, Maurice Arlos, and Michael Fordham executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "554 West 148th Street Guaranty").  A true and correct copy of the Guaranty is annexed as **Exhibit AT** and incorporated herein.

109.  On December 27, 2019, Arbor assigned the 554 West 148th Street Mortgage Agreement and 554 West 148th Street Note to Plaintiff (the "554 West 148th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register  on February 3, 2020 under Control Number 2020000042691. A true and correct copy of the 554 West 148th Street Mortgage and Note Assignment is annexed as **Exhibit AU** and incorporated herein.

110.   Plaintiff is in possession of the original 554 West 148th Street Note, indorsed in blank, which is attached hereto as Ex. AQ.  By virtue of Plaintiff's possession of the original 554 West 148th Street Note, as well as the 554 West 148th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 554 West 148th Street Note and the 554 West 148th Street Mortgage Agreement.

111.   On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 554 West 148th Property to Plaintiff (the "554 West 148th Street Collateral Agreements Assignment"), which assigned agreements including the 554 West 148th Street Agreement, the 554 West 148th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."  A true and correct copy of the 554 West 148th Street Collateral Agreements Assignment is annexed as **Exhibit AV** and incorporated herein.

### H.   *561 W 144 Realty LLC*

112.   On or about December 27, 2019, 561 W 144 Realty LLC executed an Amended and Restated Multifamily Note (the "561 West 144th Street Note") for the benefit of Arbor, the original lender under the 561 West 144th Street Note.  Under the terms of the 561 West 144th Street Note, 561 W 144 Realty LLC agreed to pay to the holder of the 561 West 144th Street Note (the "561 West 144th Street Lender") the sum of $6,317,000.00 plus interest.  A true and correct copy of the 561 West 144th Street Note is annexed as **Exhibit AW** and incorporated herein.

113.   On or about December 27, 2019, 561 W 144 Realty LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "561 West 144th Street Loan Agreement").  A true and correct copy of the 561 West 144th Street Loan Agreement is annexed as **Exhibit AX** and incorporated herein.  Under Schedule 2 of the 561 West 144th Street Loan Agreement, 561 W 144 Realty LLC was required to make monthly payments on the loan to the 561 West 144th Street

Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "561 West 144th Street Monthly Payments").

114.   In order to secure its indebtedness under the 561 West 144th Street Note, on or about December 27, 2019, 561 W 144 Realty LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "561 West 144th Street Mortgage Agreement", and together with the 561 West 144th Street Note and the 561 West 144th Street Loan Agreement, the "561 West 144th Street Loan Documents").  A true and correct copy of the 561 West 144th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 5, 2020, File No. 2020000084481, is annexed as **Exhibit AY** and incorporated herein.  Under the 561 West 144th Street Mortgage Agreement, 561 W 144 Realty LLC mortgaged to Arbor the 561 W 144th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "561 West 144th Street Mortgage").

115.  On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "561 West 144th Street Guaranty").  A true and correct copy of the 561 West 144th Street Guaranty is annexed as **Exhibit AZ** and incorporated herein.

116.  On December 27, 2019, Arbor assigned the 561 West 144th Street Mortgage Agreement and 561 West 144th Street Note to Plaintiff (the "561 West 144th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 5, 2020 under Control Number 2020000084479.  A

true and correct copy of the 561 West 144th Street Mortgage and Note Assignment is annexed as **Exhibit BA** and incorporated herein.

117.  Plaintiff is in possession of the original 561 West 144th Street Note, indorsed in blank, which is attached hereto as Ex. AW.  By virtue of Plaintiff's possession of the original 561 West 144th Street Note, as well as the 561 West 144th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 561 West 144th Street Note and the 561 West 144th Street Mortgage Agreement.

118.  On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 561 West 144th Property to Plaintiff (the "561 West 144th Street Collateral Agreements Assignment"), which assigned agreements including the 561 West 144th Street Agreement, the 561 West 144th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."  A true and correct copy of the 561 West 144th Street Collateral Agreements Assignment is annexed as **Exhibit BB** and incorporated herein.

### I.  *622 E 169 LLC*

119.  On or about February 27, 2020, 622 E 169 LLC executed an Amended and Restated Multifamily Note (the "622 East 169th Street Note") for the benefit of Arbor, the original lender under the 622 East 169th Street Note.  Under the terms of the 622 East 169th Street Note, 622 E 169 LLC agreed to pay to the holder of the 622 East 169th Street Note (the "622 East 169th Street Lender") the sum of $4,800,000.00 plus interest.  A true and correct copy of the 622 East 169th Street Note is annexed as **Exhibit BC** and incorporated herein.

120.  On or about February 27, 2020, 622 E 169 LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "622 East 169th Street Loan Agreement").  A true and correct copy of the Loan Agreement is annexed as **Exhibit BD** and incorporated herein.  Under

Schedule 2 of the 622 East 169th Street Loan Agreement, 622 E 169 LLC was required to make monthly payments on the loan to the 622 East 169th Street Lender on the first day of each month from April 1, 2020 through March 1, 2030 (the "622 East 169th Street Monthly Payments").

121.   In order to secure its indebtedness under the 622 East 169th Street Note, on or about February 27, 2020, 622 E 169 LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "622 East 169th Street Mortgage Agreement", and together with the 622 East 169th Street Note and the 622 East 169th Street Loan Agreement, the "622 East 169th Street Loan Documents").  A true and correct copy of the 622 East 169th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 18, 2020, File No. 2020000099140, is annexed as **Exhibit BE** and incorporated herein.  Under the Mortgage Agreement, 622 E 169 LLC mortgaged to Arbor the 622 East 169th Street  Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "622 East 169th Street Mortgage").

122.   On February 27, 2020, Douglas Peterson and Michael Fordham executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "622 East 169th Street Guaranty").  A true and correct copy of the 622 East 169th Street Guaranty is annexed as **Exhibit BF** and incorporated herein.

123.   On February 27, 2020, Arbor assigned the 622 East 169th Street Mortgage Agreement and 622 East 169th Street Note to Plaintiff (the "622 East 169th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of Finance Office of the City Register on March 18, 2020 under Control Number 2020000099138.

A true and correct copy of the 622 East 169th Street Mortgage and Note Assignment is annexed as **Exhibit BG** and incorporated herein.

124.   Plaintiff is in possession of the original 622 East 169th Street Note, indorsed in blank, which is attached hereto as Ex. BC.  By virtue of Plaintiff's possession of the original 622 East 169th Street Note, as well as the 622 East 169th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 622 East 169th Street Note and the 622 East 169th Street Mortgage Agreement.

125.   On or about February 27, 2020, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 622 East 169th Property to Plaintiff (the "622 East 169th Street Collateral Agreements Assignment"), which assigned agreements including the 622 East 169th Street Agreement, the 622 East 169th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."  A true and correct copy of the 622 East 169th Street Collateral Agreements Assignment is annexed as **Exhibit BH** and incorporated herein.

### J.   *712 W 180 Realty LLC*

126.   On or about December 27, 2019, 712 W 180 Realty LLC executed an Amended and Restated Multifamily Note (the "712 West 180th Street Note") for the benefit of Arbor, the original lender under the 712 West 180th Street Note.  Under the terms of the 712 West 180th Street Note, the Borrower-Defendant agreed to pay to the holder of the 712 West 180th Street Note (the "712 West 180th Street Lender") the sum of $5,953,000.00 plus interest.  A true and correct copy of the 712 West 180th Street Note is annexed as **Exhibit BI** and incorporated herein.

127.   On or about December 27, 2019, 712 W 180 Realty LLC and Arbor entered into a Multifamily Loan and Security Agreement (the "712 West 180th Street Loan Agreement").  A true and correct copy of the 712 West 180th Street Loan Agreement is annexed as **Exhibit BJ** and

incorporated herein.  Under Schedule 2 of the 712 West 180th Street Loan Agreement, 712 W 180 Realty LLC was required to make monthly payments on the loan to the 712 West 180th Street Lender on the first day of each month from February 1, 2020 through January 1, 2030 (the "712 West 180th Street Monthly Payments").

128.  In order to secure its indebtedness under the 712 West 180th Street Note, on or about December 27, 2019, 712 W 180 Realty LLC simultaneously executed a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "712 West 180th Street Mortgage Agreement", and together with the 712 West 180th Street Note and the 712 West 180th Street Loan Agreement, the "712 West 180th Street Loan Documents").  A true and correct copy of the 712 West 180th Street Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on March 9, 2020, File No. 2020000087577, is annexed as **Exhibit BK** and incorporated herein.  Under the 712 West 180th Street Mortgage Agreement, 712 W 180 Realty LLC mortgaged to Arbor the 712 W 180th Property (defined *infra*), including, among other things, the structures and buildings upon it, the leases on the property, and the rents and income received on the property (the "712 West 180th Street Mortgage").

129.  On December 27, 2019, Douglas Peterson and Maurice Arlos executed a Guaranty of Non-Recourse Obligations to and for the benefit of Arbor (the "712 West 180th Street Guaranty").  A true and correct copy of the 712 West 180th Street Guaranty is annexed as **Exhibit BL** and incorporated herein.

130.  On December 27, 2019, Arbor assigned the 712 West 180th Street Mortgage Agreement and 712 West 180th Street Note to Plaintiff (the "712 West 180th Street Mortgage and Note Assignment") in a written instrument duly recorded in the New York City Department of

Finance Office of the City Register on March 9, 2020 under Control Number 2020000087575.  A true and correct copy of the 712 West 180th Street Mortgage and Note Assignment is annexed as **Exhibit BM** and incorporated herein.

131. Plaintiff is in possession of the original 712 West 180th Street Note, indorsed in blank, which is attached hereto as Ex. BI.  By virtue of Plaintiff's possession of the original 712 West 180th Street Note, as well as the 712 West 180th Street Mortgage and Note Assignment, Plaintiff became and is still the mortgagee on, and owner and holder of, the 712 West 180th Street Note and the 712 West 180th Street Mortgage Agreement.

132. On or about December 27, 2019, Arbor assigned certain "Collateral Agreements and Other Loan Documents" related to the 712 West 180th Property to Plaintiff (the "712 West 180th Street Collateral Agreements Assignment"), which assigned agreements including the 712 West 180th Street Agreement, the 712 West 180th Street Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan."  A true and correct copy of the 712 West 180th Street Collateral Agreements Assignment is annexed as **Exhibit BN** and incorporated herein.

## II.    **The Properties**

133. The property owned by 2120 Tiebout LLC is located at 2120-2126 Tiebout Avenue, Bronx, New York 10457 (the "Tiebout Property") and is more particularly described as follows:

> ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:
>
> BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF TIEBOUT AVENUE, DISTANT 287.04 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF TIEBOUT AVENUE WITH THE NORTHEASTERLY SIDE OF EAST 180TH STREET;
>
> RUNNING THENCE NORTHEASTERLY, ALONG THE SOUTHEASTERLY SIDE OF TIEBOUT AVENUE, 22082 FEET;

THENCE SOUTHEASTERLY PARALLEL WITH EAST 182ND STREET, 104.32 FEET;

THENCE SOUTHWESTERLY, PARALLEL WITH WEBSTER AVENUE, 219.09 FEET;

THENCE NORTHWESTERLY, ALONG A LINE MAKING AN EXTERIOR ANGLE OF 87 DEGREES 42 MINUTES 32 SECONDS WITH THE SOUTHEASTERLY SIDE OF TIEBOUT AVENUE, 100.08 FEET TO THE SOUTHWESTERLY SIDE OF TIEBOUT AVENUE TO THE POINT OR PLACE OF BEGINNING.

134.   A property owned by 2705 & 2707 Morris LLC is located at 2705 Morris Avenue, Bronx, New York, 10468 (the "2705 Morris Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF MORRIS AVENUE DISTANT 300 FEET SOUTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 196TH STREET WITH THE WESTERLY SIDE OF MORRIS AVENUE;

RUNNING THENCE WESTERLY PARALLEL WITH EAST 196TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL 130 FEET;

THENCE SOUTHERLY PARALLEL WITH MORRIS AVENUE 50 FEET;

THENCE EASTERLY PARALLEL WITH EAST 196TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL 130 FEET TO THE WESTERLY SIDE OF MORRIS AVENUE;

THENCE NORTHERLY ALONG THE WESTERLY SIDE OF MORRIS AVENUE 50 FEET TO THE PINT OR PLACE OF BEGINNING.

135.   A property owned by 2705 & 2707 Morris LLC is located at 2707 Morris Avenue, Bronx, New York, 10468 (the "2707 Morris Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF MORRIS AVENUE DISTANT 250 FEET SOUTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 196TH STREET WITH THE WESTERLY SIDE OF MORRIS AVENUE;

RUNNING THENCE WESTERLY PARALLEL WITH EAST 196TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL 130 FEET;

THENCE SOUTHERLY PARALLEL WITH MORRIS AVENUE 50 FEET;

THENCE EASTERLY PARALLEL WITH EAST 196TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL 130 FEET TO THE WESTERLY SIDE OF MORRIS AVENUE;

THENCE NORTHERLY ALONG THE WESTERLY SIDE OF MORRIS AVENUE 50 FEET TO THE PINT OR PLACE OF BEGINNING.

136.  The Property owned by Defendant 452 W 164 Realty LLC is located at 452 West 164th Street,  New York, NY, 10032 (the "452 W 164th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WEST 164TH STREET DISTANT, 111 FEET EASTWARDLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF WEST 164TH STREET AND THE EASTERLY SIDE OF AMSTERDAM AVENUE;

RUNNING THENCE SOUTHWARDLY AND PARALLEL WITH AMSTERDAM AVENUE, 114 FEET 6 ¼ INCHES;

THENCE EASTWARDLY AND PARALLEL WITH WEST 164TH STREET, 14 FEET;

THENCE NORTHWARDLY AND AGAIN PARALLEL WITH AMSTERDAM AVENUE, 2 FEET 2 INCHES;

THENCE EASTWARDLY AND AGAIN PARALLEL WITH WEST 164TH STREET, 25 FEET;

THENCE NORTHWARDLY AND AGAIN PARALLEL WITH AMSTERDAM AVENUE, 112 FEET 4 ¼ INCHES TO THE SOUTHERLY SIDE OF WEST 164TH STREET;

THENCE WESTWARDLY ALONG THE SOUTHERLY SIDE OF WEST 164TH STREET 39 FEET TO THE POINT OR PLACE OF BEGINNING.

137.  The Property owned by Defendant 503 W 169 LLC is located at 503 West 169th Street, New York, NY 10032 (the "503 W 169th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF WEST 169TH STREET, DISTANT 50 FEET WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF TENTH (NOW AMSTERDAM) AVENUE AND THE NORTHERLY SIDE OF WEST 169TH STREET;

RUNNING THENCE WESTERLY ALONG THE NORTHERLY SIDE OF WEST 169TH STREET, 50 FEET;

THENCE NORTHERLY PARALLEL WITH THE WESTERLY SIDE OF AMSTERDAM AVENUE, 101 FEET 7 INCHES;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 169TH STREET, 50 FEET;

THENCE SOUTHERLY PARALLEL WITH THE WESTERLY SIDE OF AMSTERDAM AVENUE AND PART OF THE DISTANCE THROUGH A PARTY WALL OF, 101 FEET 7 INCHES, TO THE POINT OR PLACE OF BEGINNING.

138.  The Property owned by Defendant Skyline 135th LLC is located at 505 West 135th Street, New York NY  10031 (the "505 W 135th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF 135TH STREET, DISTANT 100 FEET WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF SAID NORTHERLY SIDE OF 135TH STREET WITH THE WESTERLY SIDE OF AMSTERDAM AVENUE (FORMERLY 10TH AVENUE);

RUNNING THENCE NORTHERLY PARALLEL WITH THE SAID WESTERLY SIDE OF AMSTERDAM AVENUE, 99 FEET 11 INCHES TO THE CENTER LINE OF THE BLOCK, BETWEEN 135TH AND 136TH STREET;

THENCE WESTERLY PARALLEL WITH THE SAID NORTHERLY SIDE OF 135TH STREET, 40 FEET;

THENCE SOUTHERLY, AGAIN PARALLEL WITH THE SAID WESTERLY SIDE OF AMSTERDAM AVENUE AND PART OF THE DISTANCE THROUGH A CERTAIN PARTY WALL, 99 FEET 11 INCHES TO THE NORTHERLY SIDE OF 135TH STREET; AND

THENCE EASTERLY, ALONG THE SAID NORTHERLY SIDE OF 135TH STREET, 40 FEET TO THE POINT OR PLACE OF BEGINNING.

139.   The Property owned by Defendant 148th ST LLC is located at 522 West 148th Street, New York, NY 10031 (the "522 W 148th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK, AND BEING BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY LINE OF WEST 148TH STREET, DISTANT 308 FEET 4 INCHES (TAX MAP) (308 FEET 6 INCHES SURVEY) WESTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF AMSTERDAM AVENUE, WITH THE SOUTHERLY SIDE OF WEST 148TH STREET;

RUNNING THENCE SOUTHERLY AND PARALLEL WITH AMSTERDAM AVENUE AND PART OF THE DISTANCE THROUGH A PARTY WALL 99 FEET 11 INCHES TO THE CENTER LINE OF THE BLOCK BETWEEN WEST 147TH AND WEST 148TH STREETS;

THENCE WESTERLY ALONG THE SAID CENTER LINE OF THE BLOCK, 41 FEET 8 INCHES (TAX MAP) (41 FEET 6 INCHES SURVEY);

THENCE NORTHERLY AND PARALLEL WITH AMSTERDAM AVENUE, 99 FEET 11 INCHES TO THE SOUTHERLY SIDE OF WEST 148TH STREET; AND

THENCE EASTERLY AND ALONG THE SOUTHERLY SIDE OF WEST 148TH STREET, 41 FEET 8 (TAX Map) (41 FEET 6 INCHES SURVEY) INCHES TO THE POINT OR PLACE OF BEGINNING.

140.  The Property owned by Defendant 554 W 148 LLC is located at 554 West 148th Street, New York, NY 10031 (the "554 W 148th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WEST 148TH STREET, DISTANT 185 FEET EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF 148TH STREET WITH THE EASTERLY SIDE OF BROADWAY;

RUNNING THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF BROADWAY AND PART OF THE WAY THROUGH A PARTY WALL, 99 FEET 11 INCHES TO THE CENTER OF THE BLOCK;

THENCE EASTERLY, ALONG THE CENTER LINE OF THE BLOCK, 50 FEET;

THENCE NORTHERLY PARALLEL WITH THE EASTERLY SIDE OF BROADWAY, 99 FEET 11 INCHES TO THE SOUTHERLY SIDE OF WEST 148TH STREET;

THENCE WESTERLY, ALONG THE SOUTHERLY SIDE OF WEST 148TH STREET, 50 FEET TO THE POINT OR PLACE OF BEGINNING.

141.  The Property owned by Defendant 561 W 144 Realty LLC is located at 561 West 144th Street, New York, NY 10031 (the "561 W 144th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY, CITY AND STATE OF NEW YORK, DESIGNATED ON TAX MAP OF THE CITY OF NEW YORK FOR THE BOROUGH OF MANHATTAN, AS SAID TAX MAP WAS ON 3/30/71, AS SECTION 7, BLOCK 2076, LOT 5, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHERLY SIDE OF WEST 144TH STREET, DISTANT 100 FEET EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE NORTHERLY SIDE OF WEST 144TH STREET AND THE EAST SIDE OF BROADWAY;

RUNNING THENCE NORTHERLY PARALLEL WITH THE EASTERLY SIDE OF BROADWAY, 99 FEET 11 INCHES TO THE CENTER OF THE BLOCK;

THENCE EASTERLY, ALONG THE CENTER LINE OF THE BLOCK, 50 FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF BROADWAY AND PART OF THE WAY THROUGH A PARTY WALL, 99 FEET 11 INCHES TO THE NORTHERLY SIDE OF WEST 144TH STREET;

THENCE WESTERLY, ALONG THE NORTHERLY SIDE OF WEST 144TH STREET, 50 FEET TO THE POINT OR PLACE OF BEGINNING.

142.   The Property owned by Defendant 622 E 169 LLC is located at 622 East 169th Street Bronx, NY 10456 (the "622 E 169th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BRONX, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF EAST 169TH STREET, AS LEGALLY OPENED, NOW KNOWN AS MCKINLEY SQUARE, DISTANT 253.68 FEET NORTHEASTERLY MEASURED ALONG SAID SOUTHERLY SIDE OF SAID STREET AS IT CURVES TO THE RIGHT FROM ITS POINT OF INTERSECTION WITH THE EASTERLY SIDE OF FRANKLIN AVENUE;

RUNNING THENCE SOUTHERLY PARALLEL WITH SAID EASTERLY SIDE OF FRANKLIN AVENUE, AS LAID DOWN ON THE MAP OF MORRISANIA OF 1848, A DISTANCE OF 77.80 FEET;

THENCE EASTERLY AT RIGHT ANGLES TO SAID EASTERLY SIDE OF FRANKLIN AVENUE, 1.24 FEET;

THENCE SOUTHERLY PARALLEL WITH SAID EASTERLY SIDE OF FRANKLIN AVENUE, AS ON SAID MAP, 47 FEET;

THENCE EASTERLY AT RIGHT ANGLES TO SAID EASTERLY SIDE OF FRANKLIN AVENUE, AS ON SAID MAP, 46.75 FEET;

THENCE NORTHERLY ON A LINE FORMING AT AN ANGLE ON ITS WESTERLY SIDE WITH THE LAST MENTIONED COURSE OF 89 DEGREES 38 MINUTES 59 SECONDS, 28.21 FEET;

THENCE EASTERLY ON A LINE FORMING AN ANGEL ON ITS SOUTHERLY SIDE WITH THE LAST MENTIONED COURSE OF 89 DEGREES 24 MINUTES 32 SECONDS, 119.83 FEET TO THE SOUTHERLY SIDE OF EAST 169TH STREET, AS LEGALLY OPENED, NOW KNOWN AS MCKINLEY SQUARE;

THENCE SOUTHWESTERLY ALONG SAID SOUTHERLY SIDE OF EAST 169TH STREET, AS LEGALLY OPENED, NOW KNOWN AS MCKINLEY SQUARE, AS IT CURVES, 53.10 FEET TO THE POINT OR PLACE OF BEGINNING.

143.  The Property owned by Defendant 712 W 180 Realty LLC is located at 712 West 180th Street, New York, NY 10033 (the "712 W 180th Property") and is more particularly described as follows:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK, AS SAID TAX MAP WAS ON NOVEMBER 26, 1974 KNOWN AS SECTION 8 BLOCK 2176, LOT 42, BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF WEST 180TH STREET, DISTANT 227 FEET 4 AND 5/8 INCHES (DEED) 229.39 FEET (SURVEY) EASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF SAID SOUTHERLY SIDE OF 180TH STREET WITH THE EASTERLY SIDE OF FORT WASHINGTON AVENUE;

RUNNING THENCE EASTERLY ALONG SAID SOUTHERLY SIDE OF 180TH STREET, 58 FEET 4 INCHES (DEED) 58.33 (SURVEY) TO A POINT;

THENCE SOUTHERLY AND AD RIGHT ANGLES TO SAID SOUTHERLY SIDE OF 180TH STREET, 100 FEET TO THE CENTER LINE OF THE BLOCK;

THENCE WESTERLY ALONG SAID CENTER LINE OF THE BLOCK, 50 FEET 4 INCHES (DEED) 58.33 FEET (SURVEY) TO A POINT;

THENCE NORTHERLY AND AGAIN AT RIGHT ANGLES TO SAID SOUTHERLY SIDE OF 180TH STREET AND PART OF THE DISTANCE THROUGH A PARTY WALL, 100 FEET TO SAID SOUTHERLY SIDE OF 180TH STREET, AT THE POINT OR PLACE OF BEGINNING.

## III.   Assignment of Rents

144.  Under Section 3 of the Mortgage Agreements, each Borrower-Defendant executed an Assignment of Rents (the "Assignment of Rents") to the Lenders.  Under the Assignment of Rents, each Borrower-Defendant absolutely and unconditionally assigned and transferred to Lender all respective "Rents," as that term is defined in the Mortgage Agreements.  In return, the

Lender granted each Borrower-Defendant a revocable license to collect and receive all respective Rents, to hold all Rents in trust for the benefit of Lender, to apply all Rents to pay the installments of interest and principal due and payable under the Note and the other amounts due and payable under the Loan Documents, and to pay the costs and expenses of managing and maintaining the respective Properties.  Each Borrower-Defendant was further authorized to retain any remaining Rents for their respective Properties.

145. Upon the occurrence of an Event of Default (*see* Section 14.01 of each Loan Agreement) under the Loan Documents, each Borrower-Defendant's license to collect rents automatically terminates, and Lender is entitled to receive all Rents as they become due and payable.  To that end, under Section 3(c) of the Mortgage Agreements, each Borrower-Defendant agreed to pay any such Rents over to Lender.

**IV.**   **Personal Liability of Borrower-Defendants and Guarantor-Defendants**

146.  Under Section 3.02(a) of the Loan Agreements, each Borrower-Defendants agreed to be held personally liable to Lender "for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of" certain enumerated items listed therein.  *See* Exs. B, H, N, T, Z, AF, AL, AR, AX, BD, BJ.

147.  Among the items for which the Borrower-Defendants agreed to accept personal liability was their failure to pay Lender, upon demand after an Event of Default, all Rents (*see* Section 3.02(a)(1) of the Loan Agreements) to which Lender is entitled under Section 3(a) of the Mortgage Agreements and the amount of all security deposits collected by the Borrower-Defendants from tenants then in residence.

148.  Under Section 3.02(b) of the Loan Agreements, each Borrower-Defendant agreed to be liable to Lender for the repayment of all the indebtedness due under the Loan Documents,

and that the mortgage loan would be fully recourse to the Borrower-Defendant, upon the occurrence of certain events, including among other things, a "Transfer" (as such term is defined in the Loan Agreement) and a bankruptcy filing by the Borrower-Defendant. *Id*.

149. Under Section 3.03 of the Loan Agreements, the Borrower-Defendants agreed to be "personally and fully liable to Lender" for their "indemnity obligations under Section 13.01(e) of [the] Loan Agreement, the Environmental Indemnity Agreement, and any other express indemnity obligations provided by Borrower under any Loan Document." *Id*.

150. Under the Guaranties, each Guarantor-Defendant "guarantees to Lender the full and prompt payment and performance when due . . . of all amounts, obligations, and liabilities owed to Lender under Article 3 . . . of the Loan Agreement . . . and all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under th[e] Guaranty." Exs. D, J, P, V, AB, AH, AN, AT, AZ, BF, BL.

## V.   Defaults, Fees, and Remedies, Including Foreclosure, Under the Loan Documents

151. Under Section 14.01(a)(1) of the Loan Agreements, any failure by the Borrower-Defendants to pay or deposit when due any amount required by the Notes, the Mortgage Agreements, or any other Loan Document is deemed an automatic "Event of Default." *See* Exs. B, H, N, T, Z, AF, AL, AR, AX, BD, BJ. This includes failure to pay any Monthly Payment.

152. Under Section 5 of the Mortgage Agreements, following an Event of Default, the Lender may declare the entire amount of the indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law. Exs. C, I, O, U, AA, AG, AM, AS, AY, BE, BK. Lender is also entitled to

> all expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender

for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; . . . and [] all additional advances made pursuant to Section 8303 of the Civil Practice Law and Rules of the State of New York and costs . . . of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents.  All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, [or] any Foreclosure Event . . . shall be additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

*Id.*

153.  Under Section 2.02(d)(1)(A) of the Loan Agreements, if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty (30) days or more, then interest on such unpaid amount(s) shall accrue from the date payment is due at the "Default Rate."  *See* Exs. B, H, N, T, Z, AF, AL, AR, AX, BD, BJ.  The Default Rate is defined in the Loan Agreements to be the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrower under applicable law."  *See id.*, Schedule 1.

154.  Additionally, under Section 2.02(c) of the Loan Agreements, if any amount payable under the Loan Agreements is not received by Lender within ten days of the due date, the Borrower-Defendants are required to pay Lender a late charge.  *Id.*  The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate.

155. Furthermore, pursuant to the Mortgage Agreements, the Borrower-Defendants agreed to pay all Indebtedness, including all Enforcement Costs, which include, among other things:

All expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

Exs. C, I, O, U, AA, AG, AM, AS, AY, BE, BK.

156. Finally, under Section 3(g) of the Mortgage Agreements, if the Rents are not sufficient to meet the Lender's costs of taking control and managing the Property, Lender is entitled to have any additional funds it expends to operate the Properties added to the indebtedness due under the Loan Documents.  *See Id*.

## VI.   <u>Failures to Make Monthly Payments Due and Events of Default</u>

157. On or about February 1, 2023, Defendant 2120 Tiebout LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

158. On or about April 1, 2023, Defendant 452 W 164 Realty LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

159. On or about April 1, 2023, Defendant 148th Street LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default

under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

160.   On or about April 1, 2023, Defendant 712 W 180 Realty LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

161.   On or about April 1, 2023, Defendant 554 W 148 LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

162.   On or about April 1, 2023, Defendant Skyline 135th LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

163.   On or about April 1, 2023, Defendant 503 W 169 LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

164. On or about February 1, 2023, Defendant 561 W 144 Realty LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

165. On or about February 1, 2023, Defendant 2705 & 2707 Morris LLC failed to pay the Monthly Payments for the 2705 Morris Property and the 2707 Morris Property due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

166. On or about February 1, 2023, Defendant 622 E 169 LLC failed to pay the Monthly Payment due as required under the Loan Documents and has failed to make any subsequent Monthly Payments when due.  Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

## VII.   Demands for Payment of Loan and Termination of Licenses to Collect Rents

167. As of the filing of this Complaint, none of the Borrower-Defendants have made any of the above-referenced missed Monthly Payments, as required under the Loan Documents.

168. On April 25, 2023, Plaintiff sent letters to 622 E 169 LLC,  561 W 144 Realty LLC, 2705 & 2707 Morris LLC, and 2120 Tiebout LLC, and their respective guarantors, notifying them that they were in default of their obligations under the Loan Documents by virtue of their failure to pay the Monthly Payments.

169.  On May 31, 2023, Plaintiff sent letters to Skyline 135th LLC, 503 W 169 LLC, 148th Street LLC, 712 W 180 Realty LLC, 452 W 164 Realty LLC, and 554 W 148 LLC, and their respective guarantors, notifying them that they were in default of their obligations under the Loan Documents by virtue of their failure to pay the Monthly Payments.

170. The demand letters sent on April 25, 2023 and May 31, 2023 (the "Demand Letters") are substantially similar in substance and terms.  True and correct copies of the Demand Letters are annexed as **Exhibit BO** and incorporated herein.

171.  In each Demand Letter, Plaintiff demanded that the respective Borrower-Defendant and Guarantor-Defendant pay immediately all of the outstanding principal and accrued and unpaid interest under the Note, in its entirety, together with all applicable charges and all costs, expenses, and attorneys' fees incurred by Plaintiff.  *See Id*.  Plaintiff notified each Borrower-Defendant and Guarantor-Defendant that, by reason of the defaults, Plaintiff may immediately institute foreclosure proceedings under each respective Mortgage and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity.  *See id*.  These rights and remedies included, without limitation, the appointment of a receiver over the Property.  *See id.*

172. Additionally, in each Demand Letter, Plaintiff gave notice that the respective Borrower-Defendant's license to collect Rents at the Property was terminated, and that Plaintiff is now entitled to all Rents as they become due and payable.  *See id.*  Each Demand Letter went on to demand that any Rents collected by the respective Borrower-Defendant after the occurrence of the Events of Default in the beginning of 2023 be received and held by each Borrower-Defendant in trust for the benefit of Plaintiff, and only applied to "bona fide current operating expenses to

third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents." *Id.*

173. As of the filing of this Complaint, none of the Borrower-Defendants have turned over any Rents or security deposits to Plaintiff.

**VIII.  Pre-Negotiation Letters**

174. In July 2023, on behalf of Borrower-Defendants, Douglas Peterson, Maurice Arlos, and Michael Fordham sought to discuss the problems associated with the Loans.

175. On August 1, 2023, on behalf of Borrower-Defendants, Douglas Peterson, Maurice Arlos, and Michael Fordham signed a pre-negotiation letter establishing the terms and conditions for negotiations over the Loans for the Properties (the "PNL").

176. As part of the terms of the PNL, Borrower-Defendants, Douglas Peterson, Maurice Arlos, and Michael Fordham agreed that they "hereby waive and release any and all claims that they may have against Fannie Mae or the Servicer related to the Loans as of the date of this letter." Furthermore, Borrower-Defendants, Douglas Peterson, Maurice Arlos, and Michael Fordham "waive and release any and all defenses that they may have to the rights and remedies of Fannie Mae, and as appropriate, the Servicer, under the provisions of the Loan Documents and applicable law."

177. Finally, pursuant to the PNL, each Borrower-Defendant "acknowledges that each of the Loan Documents is valid, fully enforceable in accordance with its terms, and evidences legal and  binding obligations which are in full force and effect" and "that the Loans are in default and that the Loans were properly accelerated by Fannie Mae."

## IX.   <u>Liens on the Property</u>

178.  Under Section 11.02(a) of the Loan Agreements, the Borrower-Defendants "shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime)."  Exs. B, H, N, T, Z, AF, AL, AR, AX, BD, BJ.

179.  Additionally, under Section 3.02(b) of the Loan Agreements, the Borrower-Defendants agreed to be fully personally liable for the entire Indebtedness (as such term is defined in the Loan Documents) under certain circumstances, including the incurrence of any impermissible "Transfer."  *Id*.  Schedule 1 to the Loan Agreements defines "Transfer" as, among other things, "a granting, pledging, creating or attachment of a lien, encumbrance or security interest."  *Id*.

180.  According to recently-issued title reports for the Property, the following parties may allege liens against the Properties, each of which is junior to the Mortgage securing the respective Property: Matthew Kladney, Matthew L. McGann, Aremye Realty Corporation, the New York City Department of Housing Preservation & Development, and the New York City Environmental Control Board.  Plaintiff has named each such party as a defendant herein.

181.  In July 2022, Matthew L. McGann was awarded a judgment against 452 W 164 Realty LLC for $12,227.40, in connection with violations of the Housing Maintenance Code. Upon information and belief, the judgment remains outstanding.

182.  In April 2019, Matthew Kladney was awarded a judgment against 148th Street LLC for $54,898.76, in connection with rent overcharge.  Upon information and belief, the judgment remains outstanding.

183.  On or around May 10, 2023, a purchase money mortgage was recorded for the 522 W 148th Property, in connection with a Commercial Building Mortgage for $499,999 dated September 16, 2008, from 148th St LLC to Aremye Realty Corporation.

184.  There appears to be an outstanding $350,000 mortgage against the 622 E 169th Property made by Heights Realty Group, Inc. to Community Capital Bank dated January 28, 1993 and recorded on March 4, 1998. Upon information and belief, Community Capital Bank no longer exists and merged with Carver Federal Savings Bank around September 2006, and thus Carver Federal Savings holds the outstanding $350,000 mortgage against the 622 E 169th Property, to the extent such mortgage loan has not been satisfied.

185.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued three violations against 503 W 169 LLC since 2022 based on the failure to eliminate a rodent infestation, improper curbside recycling, and uncovered receptacles. 503 W 169 LLC defaulted on the violation for failure to eliminate a rodent infestation, which carries hundreds of dollars in fines.  The remaining violations are docketed for November 2023 and January 2024.

186.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued two violations in 2023 against Skyline 135th LLC based on work without a permit, and the failure to maintain the building in code. These violations carry thousands of dollars in fines and are rescheduled for a hearing on December 14, 2023.

187.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued 15 violations against 622 E 169 LLC since 2020 based on the failure to maintain the building in code, conducting work without a permit, failure to

eliminate conditions conducive to rodents, and more.  The violations carry thousands of dollars in fines and 622 E 169 LLC has defaulted on all of them.

188.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued six violations against 561 W 144 Realty LLC based on failures to eliminate conditions conducive to rodents, failure to maintain the building in code, and more.  561 W 144 Realty LLC defaulted on three of these violations, which carry hundreds of dollars in fines, and the remaining violations are docketed for hearings later this year.

189.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued four violations against 148th Street LLC based on failures to eliminate conditions conducive to rodents and pests and the storage of receptacles.  All of these violations were heard and resulted in hundreds of dollars in fines.

190.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued a violation against 452 W 164 Realty LLC based on uncovered receptacles.  This violation is docketed for January 2024 and carries a $50 fine.

191.  The New York City Environmental Control Board (also known as the Office of Administrative Trials and Hearings) issued a violation against 2705 & 2707 Morris LLC based on the failure to clean the street at the 2705 Morris Property.  The violation is docketed for December 12, 2023.

192.  The New York City Department of Housing Preservation & Development filed a *lis pendens* against the 505 W 135th Property on September 7, 2021 in connection with a suit addressing property conditions.

193.   The New York City Department of Housing Preservation & Development filed a *lis pendens* against the Tiebout Ave Property on August 16, 2023 in connection with a suit addressing property conditions.

194.   In accordance with 12 U.S.C. 4617(j)(3) and (4), no property of the conservatorship estate of Fannie Mae shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Conservator, nor shall any involuntary lien or *lis pendens* attach to the property of the conservatorship, nor shall the conservatorship estate of Fannie Mae be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

## X.   <u>Receivership</u>

195.   Upon the occurrence of an Event of Default, each Borrower-Defendant acknowledged repeatedly in the Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee each respective Property.

196.   Section 7.02(a)(2) of the Loan Agreements states that the respective Borrower-Defendant shall "surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property."  Exs. B, H, N, T, Z, AF, AL, AR, AX, BD, BJ.

197.   Under Section 3(e) of the Mortgage Agreements, "if an Event of Default has occurred. . . Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3 . . . [and] Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver,

including the appointment of a receiver *ex parte*, if permitted by applicable law."  Exs. C, I, O, U, AA, AG, AM, AS, AY, BE, BK.

198.  Under Section 3(e) of the Mortgage Agreements, each Borrower-Defendant further agreed to "shortened time consideration of a motion to appoint a receiver."  *Id.*

199.  Under Section 3(e) of the Mortgage Agreements, each Borrower-Defendant further agreed that, "[i]mmediately upon appointment of a receiver . . . possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable."  *Id.*

## FIRST CAUSE OF ACTION
**(Foreclosure of the Tiebout Avenue Mortgage and Deficiency Judgment Against Defendant 2120 Tiebout LLC, Douglas Peterson, and Maurice Arlos)**

200.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

201.  2120 Tiebout LLC has committed multiple Events of Default under the Tiebout Avenue Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Tiebout Avenue Loan Documents, including foreclosure of the Tiebout Property.

202.  The following amounts are due and owing under the Tiebout Avenue Loan Documents, no part of which has been paid by Defendant 2120 Tiebout LLC, although duly demanded: (a) the outstanding principal sum of $11,925,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since February 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the Tiebout Avenue Note and Tiebout Avenue Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the

Tiebout Avenue Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the Tiebout Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the Tiebout Property.

203. Plaintiff has fulfilled all of its obligations under the Tiebout Avenue Loan Documents.

204. Arbor has fulfilled all of its obligations under the Tiebout Avenue Loan Documents.

205. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the Tiebout Avenue Loan Documents, or any part thereof.

206. The New York City Department of Housing Preservation and Development is a defendant by virtue of its apparent lien against the Tiebout Ave Property, as a result of a lis pendens issued in August 2023.

207. The Defendants John Doe # 1 through John Doe #76 have been made defendants because they are or may be tenants or may be in possession of the Tiebout Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Tiebout Property.

208. Any claim that any of the defendants in this action have on the Tiebout Property is subject to Housing and Economic Recovery Act ("HERA")and void or subordinate to the lien of Plaintiff evidenced by and described in the Loan Documents.

209. Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the Tiebout Avenue Mortgage and (ii) awarding Plaintiff a money judgment against the 2120 Tiebout LLC,

Douglas Peterson, and Maurice Arlos for the portion of the total indebtedness due under the Tiebout Avenue Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the Tiebout Avenue Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing. *See* Ex. B.

210. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the Tiebout Property should be sold subject to the following:

(a) Any state of facts that an inspection of the premises would disclose;

(b) Any state of facts that an accurate survey of the premises would show;

(c) Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the Tiebout Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the Tiebout Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

211. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 2120 Tiebout LLC after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## **SECOND CAUSE OF ACTION**
**(Foreclosure of the 2705 Morris Mortgage and Deficiency Judgment Against 2705 & 2707 Morris LLC, Douglas Peterson, and Maurice Arlos)**

212. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

213. 2705 & 2707 Morris LLC LLC has committed multiple Events of Default under the 2705 Morris Loan Documents. As a result of the Events of Default, Plaintiff is entitled to

exercise all rights and remedies under the 2705 Morris Loan Documents, including foreclosure of the 2705 Morris Property.

214.   The following amounts are due and owing under the 2705 Morris Loan Documents, no part of which has been paid by Defendant 2705 & 2707 Morris LLC, although duly demanded: (a) the outstanding principal sum of $4,725,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since February 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 2705 Morris Note and 2705 Morris Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 2705 Morris Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 2705 Morris Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 2705 Morris Property.

215.   Plaintiff has fulfilled all of its obligations under the 2705 Morris Loan Documents.

216.   Arbor has fulfilled all of its obligations under the 2705 Morris Loan Documents.

217.   No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 2705 Morris Loan Documents, or any part thereof.

218.   The New York City Environmental Control Board is a defendant by virtue of its outstanding violation against 2705 & 2707 Morris LLC docketed in 2023.

219.   The Defendants John Doe # 77 through John Doe #103 have been made defendants because they are or may be tenants or may be in possession of the 2705 Morris Property, or may

be corporations or other entities or person who claim, or may claim, a lien against the 2705 Morris Property.

220. Any claim that any of the defendants in this action have on the 2705 Morris Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 2705 Morris Loan Documents.

221. Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 2705 Morris Mortgage on the 2705 Morris Property and (ii) awarding Plaintiff a money judgment against 2705 & 2707 Morris LLC, Douglas Peterson, and Maurice Arlos for the portion of the total indebtedness due under the 2705 Morris Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 2705 Morris Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing. *See* Ex. H.

222. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 2705 Morris Property should be sold subject to the following:

    (a) Any state of facts that an inspection of the premises would disclose;

    (b) Any state of facts that an accurate survey of the premises would show;

    (c) Covenants, restrictions, easements, and public utility agreements of record, if any;

    (d) Building and zoning ordinances of the municipality in which the 2705 Morris Property is located and possible violations of same;

    (e) Any rights of tenants or persons in possession of the 2705 Morris Property; and

    (f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

223. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 2705 & 2707 Morris LLC,

Douglas Peterson, or Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

### THIRD CAUSE OF ACTION
**(Foreclosure of the 2707 Morris Mortgage and Deficiency Judgment Against 2705 & 2707 Morris LLC, Douglas Peterson, and Maurice Arlos)**

224.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

225.   2705 & 2707 Morris LLC LLC has committed multiple Events of Default under the 2707 Morris Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 2707 Morris Loan Documents, including foreclosure of the 2707 Morris Property.

226.   The following amounts are due and owing under the 2707 Morris Loan Documents, no part of which has been paid by Defendant 2705 & 2707 Morris LLC, although duly demanded: (a) the outstanding principal sum of $4,836,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since February 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 2707 Morris Note and 2707 Morris Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 2707 Morris Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 2707 Morris Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 2707 Morris Property.

227.  Plaintiff has fulfilled all of its obligations under the 2707 Morris Loan Documents.

228.  Arbor has fulfilled all of its obligations under the 2707 Morris Loan Documents.

229.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 2707 Morris Loan Documents, or any part thereof.

230.  The Defendants John Doe # 104 through John Doe #130 have been made defendants because they are or may be tenants or may be in possession of the 2707 Morris Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 2707 Morris Property.

231.  Any claim that any of the defendants in this action have on the 2707 Morris Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 2707 Morris Loan Documents.

232.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 2707 Morris Mortgage on the 2707 Morris Property and (ii) awarding Plaintiff a money judgment against 2705 & 2707 Morris LLC, Douglas Peterson, and Maurice Arlos for the portion of the total indebtedness due under the 2707 Morris Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 2707 Morris Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. N.

233.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 2707 Morris Property should be sold subject to the following:

(a)  Any state of facts that an inspection of the premises would disclose;

(b)  Any state of facts that an accurate survey of the premises would show;

(c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the 2707 Morris Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the 2707 Morris Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

234. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 2705 & 2707 Morris LLC, Douglas Peterson, or Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## FOURTH CAUSE OF ACTION
### (Foreclosure of the 452 W 164th Mortgage and Deficiency Judgment Against 452 W 164 Realty LLC and Douglas Peterson and Maurice Arlos)

235. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

236. 452 W 164 Realty LLC has committed multiple Events of Default under the 452 W 164th Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 452 W 164th Loan Documents, including foreclosure of the 452 W 164th Property.

237. The following amounts are due and owing under the 452 W 164th Loan Documents, no part of which has been paid by 452 W 164 Realty LLC, although duly demanded: (a) the outstanding principal sum of $3,399,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 452 W 164th Note and 452 W 164th Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 452 W 164th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver

to protect and maintain the 452 W 164th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 452 W 164th Property.

238.  Plaintiff has fulfilled all of its obligations under the 452 W 164th Loan Documents.

239.  Arbor has fulfilled all of its obligations under the 452 W 164th Loan Documents.

240.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 452 W 164th Loan Documents, or any part thereof.

241.  Matthew L. McGann is a defendant by virtue of his outstanding judgment against 452 W 164th Realty LLC.

242.  The New York City Environmental Control Board is a defendant by virtue of its outstanding violation against 452 W 164 Realty LLC docketed in 2024.

243.  The Defendants John Doe # 131 through John Doe #150 have been made defendants because they are or may be tenants or may be in possession of the 452 W 164th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 452 W 164th Property.

244.  Any claim that any of the defendants in this action have on the 452 W 164th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 452 W 164th Loan Documents.

245.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 452 W 164th Mortgage on the 452 W 164th Property and (ii) awarding Plaintiff a money judgment against the Defendant 452 W 164 Realty LLC, Douglas Peterson and Maurice Arlos for the portion of the

total indebtedness due under the 452 W 164th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 452 W 164th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. T.

246. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 452 W 164th Property should be sold subject to the following:

(a) Any state of facts that an inspection of the premises would disclose;

(b) Any state of facts that an accurate survey of the premises would show;

(c) Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the 452 W 164th Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the 452 W 164th Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

247. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by Defendant 452 W 164 Realty LLC, Douglas Peterson, or Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## FIFTH CAUSE OF ACTION
### (Foreclosure of the 503 W 169th Mortgage and Deficiency Judgment Against 503 W 169 LLC and Douglas Peterson and Michael Fordham)

248. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

249. 503 W 169 LLC has committed multiple Events of Default under the 503 W 169th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights

and remedies under the 503 W 169th Loan Documents, including foreclosure of the 503 W 169th Property.

250.  The following amounts are due and owing under the 503 W 169th Loan Documents, no part of which has been paid by 503 W 169 LLC, although duly demanded: (a) the outstanding principal sum of $3,767,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 503 W 169th Note and 503 W 169th Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 503 W 169th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 503 W 169th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 503 W 169th Property.

251.  Plaintiff has fulfilled all of its obligations under the 503 W 169th Loan Documents.

252.  Arbor has fulfilled all of its obligations under the 503 W 169th Loan Documents.

253.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 503 W 169th Loan Documents, or any part thereof.

254.  The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments against 503 W 169 LLC docketed from 2022-2024.

255.  The Defendants John Doe # 151 through John Doe #174 have been made defendants because they are or may be tenants or may be in possession of the 503 W 169th Property,

or may be corporations or other entities or person who claim, or may claim, a lien against the 503 W 169th Property.

256.  Any claim that any of the defendants in this action have on the 503 W 169th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 503 W 169th Loan Documents.

257.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 503 W 169th Mortgage on the 503 W 169th Property and (ii) awarding Plaintiff a money judgment against 503 W 169 LLC, Douglas Peterson and Michael Fordham for the portion of the total indebtedness due under the 503 W 169th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 503 W 169th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. Z.

258.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 503 W 169th Property should be sold subject to the following:

   (a)  Any state of facts that an inspection of the premises would disclose;

   (b)  Any state of facts that an accurate survey of the premises would show;

   (c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

   (d)  Building and zoning ordinances of the municipality in which the 503 W 169th Property is located and possible violations of same;

   (e)  Any rights of tenants or persons in possession of the 503 W 169th Property; and

   (f)  Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

259.  Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by Defendant 503 W 169 LLC

or Douglas Peterson or Michael Fordham after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## SIXTH CAUSE OF ACTION
### (Foreclosure of the 505 W 135th Mortgage and Deficiency Judgment Against Skyline 135th LLC and Douglas Peterson and Maurice Arlos)

260.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

261.  Skyline 135th LLC has committed multiple Events of Default under the 505 W 135th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 505 W 135th Loan Documents, including foreclosure of the 505 W 135th Property.

262.  The following amounts are due and owing under the 505 W 135th Loan Documents, no part of which has been paid by Skyline 135th LLC, although duly demanded: (a) the outstanding principal sum of $5,893,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 505 W 135th Note and 505 W 135th Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 505 W 135th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 505 W 135th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 505 W 135th Property.

263.  Plaintiff has fulfilled all of its obligations under the 505 W 135th Loan Documents.

264.  Arbor has fulfilled all of its obligations under the 505 W 135th Loan Documents.

265.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 505 W 135th Loan Documents, or any part thereof.

266.  The New York City Department of Housing Preservation and Development is a defendant by virtue of its apparent lien against the 505 W 135th Property, as a result of a *lis pendens* issued in September 2021.

267.  The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments against Skyline 135th LLC docketed in 2023.

268.  The Defendants John Doe # 175 through John Doe #195 have been made defendants because they are or may be tenants or may be in possession of the 505 W 135th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 505 W 135th Property.

269.  Any claim that any of the defendants in this action have on the 505 W 135th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 505 W 135th Loan Documents.

270.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 505 W 135th Mortgage on the 505 W 135th Property and (ii) awarding Plaintiff a money judgment against Skyline 135th LLC, Douglas Peterson and Maurice Arlos for the portion of the total indebtedness due under the 505 W 135th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 505 W 135th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. AF.

271.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 505 W 135th Property should be sold subject to the following:

    (a)  Any state of facts that an inspection of the premises would disclose;

    (b)  Any state of facts that an accurate survey of the premises would show;

    (c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

    (d)  Building and zoning ordinances of the municipality in which the 505 W 135th Property is located and possible violations of same;

    (e)  Any rights of tenants or persons in possession of the 505 W 135th Property; and

    (f)  Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

272.  Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by Skyline 135th LLC or Douglas Peterson or Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## SEVENTH CAUSE OF ACTION
### (Foreclosure of the 522 W 148th Mortgage and Deficiency Judgment Against 148th Street LLC, Douglas Peterson, Maurice Arlos, and Michael Fordham)

273.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

274.  148th Street LLC has committed multiple Events of Default under the 522 W 148th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 522 W 148th Loan Documents, including foreclosure of the 522 W 148th Property.

275.  The following amounts are due and owing under the 522 W 148th Loan Documents, no part of which has been paid by 148th Street LLC, although duly demanded: (a) the outstanding principal sum of $6,609,000.00; (b) accrued but unpaid interest thereon, including interest accruing

at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 522 W 148th Note and 522 W 148th Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 522 W 148th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 522 W 148th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 522 W 148th Property.

276. Plaintiff has fulfilled all of its obligations under the 522 W 148th Loan Documents.

277. Arbor has fulfilled all of its obligations under the 522 W 148th Loan Documents.

278. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 522 W 148th Loan Documents, or any part thereof.

279. Aremye Realty Corporation is a defendant by virtue of its outstanding junior mortgage filed against the 522 W 148th Property.

280. Matthew Kladney is a defendant by virtue of his outstanding judgment against 148th Street LLC.

281. The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments against 148th Street LLC docketed in 2023.

282. The Defendants John Doe # 196 through John Doe #216 have been made defendants because they are or may be tenants or may be in possession of the 522 W 148th Property,

or may be corporations or other entities or person who claim, or may claim, a lien against the 522 W 148th Property.

283.   Any claim that any of the defendants in this action have on the 522 W 148th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 522 W 148th Loan Documents.

284.   Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 522 W 148th Mortgage on the 522 W 148th Property and (ii) awarding Plaintiff a money judgment against 148th Street LLC, Douglas Peterson, Maurice Arlos, and Michael Fordham for the portion of the total indebtedness due under the 522 W 148th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 522 W 148th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. AL.

285.   Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 522 W 148th Property should be sold subject to the following:

(a) Any state of facts that an inspection of the premises would disclose;

(b) Any state of facts that an accurate survey of the premises would show;

(c) Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the 522 W 148th Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the 522 W 148th Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

286.   Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 148th Street LLC, Douglas

Peterson, Maurice Arlos, or Michael Fordham after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

### EIGHTH CAUSE OF ACTION
**(Foreclosure of the 554 W 148th Mortgage and Deficiency Judgment Against 554 W 148 LLC, Douglas Peterson, Maurice Arlos, and Michael Fordham)**

287.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

288.  554 W 148 LLC has committed multiple Events of Default under the 554 W 148th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 554 W 148th Loan Documents, including foreclosure of the 554 W 148th Property.

289.  The following amounts are due and owing under the 554 W 148th Loan Documents, no part of which has been paid by 554 W 148 LLC, although duly demanded: (a) the outstanding principal sum of $8,003,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 554 W 148th Note and 554 W 148th Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 554 W 148th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 554 W 148th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 554 W 148th Property.

290.  Plaintiff has fulfilled all of its obligations under the 554 W 148th Loan Documents.

291.  Arbor has fulfilled all of its obligations under the 554 W 148th Loan Documents.

292.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 554 W 148th Loan Documents, or any part thereof.

293.  The Defendants John Doe # 217 through John Doe #238 have been made defendants because they are or may be tenants or may be in possession of the 554 W 148th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 554 W 148th Property.

294.  Any claim that any of the defendants in this action have on the 554 W 148th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 554 W 148th Loan Documents.

295.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 554 W 148th Mortgage on the 554 W 148th Property and (ii) awarding Plaintiff a money judgment against 554 W 148 LLC, Douglas Peterson, Maurice Arlos, and Michael Fordham for the portion of the total indebtedness due under the 554 W 148th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 554 W 148th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. AR.

296.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 554 W 148th Property should be sold subject to the following:

(a)  Any state of facts that an inspection of the premises would disclose;

(b)  Any state of facts that an accurate survey of the premises would show;

(c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the 554 W 148th Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the 554 W 148th Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

297.   Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 554 W 148 LLC, Douglas Peterson, Maurice Arlos, or Michael Fordham after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## NINTH CAUSE OF ACTION
**(Foreclosure of the 561 W 144th Mortgage and Deficiency Judgment Against 561 W 144 Realty LLC, Douglas Peterson and Maurice Arlos)**

298.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

299.   561 W 144 Realty LLC has committed multiple Events of Default under the 561 W 144th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 561 W 144th Loan Documents, including foreclosure of the 561 W 144th Property.

300.   The following amounts are due and owing under the 561 W 144th Loan Documents, no part of which has been paid by 561 W 144 Realty LLC, although duly demanded: (a) the outstanding principal sum of $6,317,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since February 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 561 W 144th Note and 561 W 144th Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 561 W 144th Loan Documents during the pendency of this action, including tax payments, insurance premiums,

advances to a receiver to protect and maintain the 561 W 144th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 561 W 144th Property.

301.  Plaintiff has fulfilled all of its obligations under the 561 W 144th Loan Documents.

302.  Arbor has fulfilled all of its obligations under the 561 W 144th Loan Documents.

303.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 561 W 144th Loan Documents, or any part thereof.

304.  The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments against 561 W 144 Realty LLC docketed in 2023.

305. The Defendants John Doe # 239 through John Doe #259 have been made defendants because they are or may be tenants or may be in possession of the 561 W 144th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 561 W 144th Property.

306.  Any claim that any of the defendants in this action have on the 561 W 144th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 561 W 144th Loan Documents.

307.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 561 W 144th Mortgage on the 561 W 144th Property and (ii) awarding Plaintiff a money judgment against 561 W 144 Realty LLC, Douglas Peterson and Maurice Arlos for the portion of the total indebtedness due under the 561 W 144th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 561 W 144th Loan Agreement,

including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing. *See* Ex. AX.

308. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 561 W 144th Property should be sold subject to the following:

     (a) Any state of facts that an inspection of the premises would disclose;

     (b) Any state of facts that an accurate survey of the premises would show;

     (c) Covenants, restrictions, easements, and public utility agreements of record, if any;

     (d) Building and zoning ordinances of the municipality in which the 561 W 144th Property is located and possible violations of same;

     (e) Any rights of tenants or persons in possession of the 561 W 144th Property; and

     (f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

309. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 561 W 144 Realty LLC, Douglas Peterson or Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

### TENTH CAUSE OF ACTION
**(Foreclosure of the 622 E 169th Mortgage and Deficiency Judgment Against**
**622 E 169 LLC, Douglas Peterson and Michael Fordham)**

310. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

311. 622 E 169 LLC has committed multiple Events of Default under the 622 E 169th Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 622 E 169th Loan Documents, including foreclosure of the 622 E 169th Property.

312.  The following amounts are due and owing under the 622 E 169th Loan Documents, no part of which has been paid by Defendant 622 E 169 LLC, although duly demanded: (a) the outstanding principal sum of $4,800,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since February 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 622 E 169th Note and 622 E 169th Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 622 E 169th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 622 E 169th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 622 E 169th Property.

313.  Plaintiff has fulfilled all of its obligations under the 622 E 169th Loan Documents.

314.  Arbor has fulfilled all of its obligations under the 622 E 169th Loan Documents.

315.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 622 E 169th Loan Documents, or any part thereof.

316. The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments against 622 E 169 LLC docketed since 2021.

317. The Defendants John Doe # 260 through John Doe #280 have been made defendants because they are or may be tenants or may be in possession of the 622 E 169th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 622 E 169th Property.

318.  Carver Federal Savings Bank is a defendant by virtue of its outstanding $350,000 mortgage against the 622 E 169th Property (originally held by Community Capital Bank, which merged with Carver Federal Savings Bank around September 2006).

319.  Any claim that any of the defendants in this action have on the 622 E 169th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 622 E 169th Loan Documents.

320.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 622 E 169th Mortgage on the 622 E 169th Property and (ii) awarding Plaintiff a money judgment against 622 E 169 LLC, Douglas Peterson and Michael Fordham for the portion of the total indebtedness due under the 622 E 169th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 622 E 169th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. BD.

321.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 622 E 169th Property should be sold subject to the following:

    (a)  Any state of facts that an inspection of the premises would disclose;

    (b)  Any state of facts that an accurate survey of the premises would show;

    (c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

    (d)  Building and zoning ordinances of the municipality in which the 622 E 169th Property is located and possible violations of same;

    (e)  Any rights of tenants or persons in possession of the 622 E 169th Property; and

    (f)  Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

322.  Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 622 E 169 LLC, Douglas

Peterson or Michael Fordham after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

### ELEVENTH CAUSE OF ACTION
**(Foreclosure of the 712 W 180th Mortgage and Deficiency Judgment Against 712 W 180 Realty LLC, Douglas Peterson and Maurice Arlos)**

323.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

324.  712 W 180 Realty LLC has committed multiple Events of Default under the 712 W 180th Loan Documents.  As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the 712 W 180th Loan Documents, including foreclosure of the 712 W 180th Property.

325.  The following amounts are due and owing under the 712 W 180th Loan Documents, no part of which has been paid by 712 W 180 Realty LLC, although duly demanded: (a) the outstanding principal sum of $5,953,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since April 1, 2023; (c) late charges; and (d) rental payments and security deposits owed under the 712 W 180th Note and 712 W 180th Assignment of Rents to be determined.  These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the 712 W 180th Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the 712 W 180th Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the 712 W 180th Property.

326.  Plaintiff has fulfilled all of its obligations under the 712 W 180th Loan Documents.

327.  Arbor has fulfilled all of its obligations under the 712 W 180th Loan Documents.

328.  No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the 712 W 180th Loan Documents, or any part thereof.

329.  The Defendants John Doe # 323 through John Doe #343 have been made defendants because they are or may be tenants or may be in possession of the 712 W 180th Property, or may be corporations or other entities or person who claim, or may claim, a lien against the 712 W 180th Property.

330.  Any claim that any of the defendants in this action have on the 712 W 180th Property is subject to HERA and void or subordinate to the lien of Plaintiff evidenced by and described in the 712 W 180th Loan Documents.

331.  Plaintiff seeks a judgment, as more fully set forth below, (i) foreclosing the 712 W 180th Mortgage on the 712 W 180th Property and (ii) awarding Plaintiff a money judgment against 712 W 180 Realty LLC, Douglas Peterson and Maurice Arlos for the portion of the total indebtedness due under the 712 W 180th Loan Documents equal to any loss or damages suffered by Plaintiff as a result of the items enumerated in Article 3 of the 712 W 180th Loan Agreement, including Rents and security deposits as described therein, as well as full liability in the event of a "Transfer" or bankruptcy filing.  *See* Ex. BJ.

332.  Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the 712 W 180th Property should be sold subject to the following:

(a)  Any state of facts that an inspection of the premises would disclose;

(b)  Any state of facts that an accurate survey of the premises would show;

(c)  Covenants, restrictions, easements, and public utility agreements of record, if any;

(d) Building and zoning ordinances of the municipality in which the 712 W 180th Property is located and possible violations of same;

(e) Any rights of tenants or persons in possession of the 712 W 180th Property; and

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale.

333.  Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by 712 W 180 Realty LLC, Douglas Peterson and Maurice Arlos after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## TWELFTH CAUSE OF ACTION
**(Declaratory Relief under 12 U.S.C. § 4617(j)(3) and (4) Against Defendants Matthew Kladney, Matthew L. McGann, Aremye Realty Corporation, Carver Federal Savings Bank, the New York City Department of Housing Preservation & Development, and the New York City Environmental Control Board)**

334.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-234 above as though fully set forth herein.

335.  28 U.S.C. § 2201 empowers this Court to declare the rights and legal relations of the parties in this matter, both generally and in relation to the validity of interests in the Properties.

336.  Fannie Mae holds a title interest in the Properties.

337.  FHFA is an agency of the federal government of the United States and is also the Conservator for Fannie Mae.

338.  Upon its appointment, the Conservator succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges." 12 U.S.C. § 4617(b)(2)(A)(i). As a result, FHFA has succeeded to Fannie Mae's title interest in the Property.

339.  During the Conservatorship, "no property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure or sale without the consent of the [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." *Id.* § 4617(j)(3).

340.  During the Conservatorship, "[t]he Agency shall not be liable for any amounts in the nature of penalties or fines." *Id.* § 4617(j)(4).

341.  Applying New York law in a manner that imposes any judgment, lien, lis pendens or any other encumbrance that would affect or take away any conservatorship interest  in the Properties is in conflict with 12 U.S.C. § 4617(j)(3), and applying New York law in a manner that imposes a penalty or fine against any conservatorship interest in the Properties is in conflict with 12 U.S.C. § 4617(j)(4).

342.  Title 12 U.S.C. § 4617(j)(3) and (4) preempt any state law that would permit Defendants to impose a penalty or fine on the conservatorship estate  or attach a judgment, lien, lis pendens, or any other encumbrance that would affect or take away  any conservatorship property.

343.  Plaintiff named Matthew Kladney, Matthew L. McGann, Aremye Realty Corporation, Carver Federal Savings Bank, the New York City Department of Housing Preservation & Development, and the New York City Environmental Control Board as defendants herein because of their alleged liens, judgments, and/or encumbrances against one or more of the Properties.

344.  In July 2022, Matthew L. McGann was awarded a judgment against 452 W 164 Realty LLC for $12,227.40, in connection with violations of the Housing Maintenance Code. Upon information and belief, the judgment remains outstanding.

345.  Matthew Kladney is a defendant by virtue of his outstanding judgment against 148th Street LLC.

346.  Aremye Realty Corporation is a defendant by virtue of its outstanding junior mortgage filed against the 522 W 148th Property.

347.  Carver Federal Savings Bank is a defendant by virtue of its outstanding mortgage filed against the 622 E 169th Property.

348.  The New York City Department of Housing Preservation & Development filed a *lis pendens* against the 505 W 135th Property on September 7, 2021 in connection with a suit addressing property conditions.

349.  The New York City Department of Housing Preservation & Development filed a *lis pendens* against the Tiebout Ave Property on August 16, 2023 in connection with a suit addressing property conditions.

350.  The New York City Environmental Control Board is a defendant by virtue of its outstanding violations and judgments issued against 2705 & 2707 Morris LLC, 148th Street LLC, 452 W 164 Realty LLC, 503 W 169 LLC, 561 W 144 Realty LLC, 622 E 169 LLC, and Skyline 135th LLC.

351.  FHFA did not provide its consent to the incurrence of any of the above-references liens, lis pendens,or  judgments as encumbrances on conservatorship estate interests.

352.  Plaintiffs are entitled to a declaration that the alleged prior liens and associated fines and penalties asserted by Matthew Kladney, Matthew L. McGann, Aremye Realty Corporation, Carver Federal Savings Bank, the New York City Department of Housing Preservation & Development, and the New York City Environmental Control Board are preempted under federal law and void when this action proceeds to a judgment of foreclosure and sale for the Properties.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff demands judgment as follows:

(a)      That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien

and equity of redemption of, in and to each respective Property and each and every part and parcel thereof;

(b)      That at least one receiver possessing such powers as those granted to him/her under the Mortgage Agreements and applicable law be appointed for the Properties;

(c)      That each of the Properties may be decreed to be sold in one or more parcels according to applicable law;

(d)      That the monies arising from the sale of each of the Properties may be brought into Court or to an account designated by Plaintiff;

(e)      That the amount due Plaintiff under each set of Loan Documents for each Property be adjudged, and that from the monies arising from respective sale of the Property, Plaintiff be paid the amount due it under the Loan Documents for that Property with interest to the time of such payment, the expenses of sale, and the costs and expenses of this action, including reasonable attorneys' fees and expenses, together with any monies which may be paid by Plaintiff for taxes, water and sewer charges and assessments, insurance premiums, and all other charges and liens thereon to be paid for each respective Property, with interest at the Default Rate upon such amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

(f)      That the Borrower-Defendants and Guarantor-Defendants may be adjudged to pay all amounts due under Article 3 of the respective Loan Agreements for which they agreed to be held personally liable;

(g) That the alleged liens, judgments, encumbrances, and associated fines and penalties asserted by Matthew Kladney, Matthew L. McGann, Aremye Realty Corporation, Carver Federal

Savings Bank, the New York City Department of Housing Preservation & Development, and the New York City Environmental Control Board are preempted under federal law and void; and

     (h)     That Plaintiff be awarded such other and further relief as shall be just and equitable.

New York, New York
Dated:  October 27, 2023

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD**

By:   */s/ Dean L. Chapman Jr.*
Dean L. Chapman Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-8095
Facsimile: (212) 872-1002

*Attorney for Plaintiff Federal National Mortgage Association*