UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

                                                                Plaintiff,

-vs.-

2120 TIEBOUT LLC, 452 W 164 REALTY LLC, 148TH STREET LLC, 712 W 180 REALTY LLC, 554 W 148 LLC, SKYLINE 135TH LLC, 503 W 169 LLC, 561 W 144 REALTY LLC, 2705 & 2707 MORRIS LLC, 622 E 169 LLC, DOUGLAS PETERSON, MAURICE ARLOS, MICHAEL FORDHAM, MATTHEW L. MCGANN, MATTHEW KLADNEY, AREMYE REALTY CORPORATION, CARVER FEDERAL SAVINGS BANK, the NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION & DEVELOPMENT, the NEW YORK CITY ENVIRONMENTAL CONTROL BOARD and JOHN DOES #1 THROUGH JOHN DOE #343, inclusive, the names of the last 343 defendants being fictitious, the true names of said defendants being unknown to plaintiff, it being intended to designate any occupants or tenants of the mortgaged premises who are in default in the payment of rent for which a proceeding is now pending by the mortgagor and/or other persons or parties having or claiming an interest in or lien upon the mortgaged premises subordinate to that of the mortgagee, if the aforesaid individual defendants are living, and if any or all of said individual defendants be dead, their heirs at law, next of kin, distributes, executors, administrators, trustees, committees, devisees, legatees and the assignees, lienors, creditors, successors in interest of them, and generally all persons having or claiming under, by, through or against the said defendants named as a class, any right, title or interest in or lien upon the premises described in the complaint herein,

                                                                Defendants.
------------------------------------------------------------------x

No. 1:23-cv-09445 (DEH) (BCM)

**DECLARATION OF DOUGLAS PETERSON IN RESPONSE TO MOTION FOR EMERGENCY RELIEF**

1

Douglas Peterson declares the following under penalties of perjury pursuant to 28 U.S.C. Section 1746:

1. I am a managing member of the corporate defendants, 2120 Tiebout LLC, 452 W 164 Realty LLC, 148th Street LLC, 712 W 180 Realty LLC, 554 W 148 LLC, Skyline 135th LLC, 503 W 169 LLC, 561 W 144 Realty LLC, 2705 & 2707 Morris LLC, 622 E 169 LLC (collectively, the "Borrowers") and one of the individual defendants herein. As such I am fully familiar with the facts and circumstances set forth herein.

2. I respectfully submit this Declaration in response to the motion of plaintiff, Federal National Mortgage Association ("Plaintiff" or "Fannie Mae") seeking to compel a turnover of the Borrowers' respective accumulated cash funds collected prior to the appointment of the Receiver (Trigild IVL) pursuant to Order dated January 31, 2024 (the "Receiver Order").

3. During the pendency of the foreclosure action, the partes have engaged in restructuring negotiations without prejudice to Plaintiff's litigation rights. Certain of the Borrowers are attempting to negotiate a reinstatement of the mortgages based on requested modified terms. There is no agreement in place yet, and the Borrowers have recently cut back on their pursuit of mortgage modifications, limiting requested relief at this point to the five buildings located at 554 W. 148th Street, 522 W. 148th Street, 505 W. 135th Street and 66 and 72 E. 190th Street.

4. As to the balance of the buildings located at 712 W. 180th Street, 503 W. 169th Street, 452 W. 164th Street, 622 E. 169th Street, 2705 and 2907 Morris Avenue, 2120 Tiebout Avenue, and 561 W. 144th Street, the Borrowers have offered to immediately surrender title to the Plaintiff or otherwise cooperate in a foreclosure process to expedite matters.

5. As part of the negotiations, the Borrowers have provided extensive reports and transparency relating to the Buildings' respective operating income and expenses, as well as the

balance of accumulated cash deposits. The Borrowers have indicated that they hoped to utilize certain of the cash deposits to cure existing mortgage arrears owed to Fannie Mae if a mortgage restructuring on various buildings can be reached.

6. In the interim, the Borrowers have also indicated that they are maintaining cash deposits for the benefit of the buildings, without dissipation, except for payment of certain pre-approved insurance and SBA installments as reported to the Receiver in February. A summary of all cash funds currently on deposit on a building-by-building basis is listed on the scheduled annexed hereto as Exhibit "A". In total, the pre-February 1, 2024 accumulated cash currently aggregates $1,981,286.16. To date, the Borrowers have remitted the total sums of $551,405.16 to the Receiver, representing security deposits and post-February 1, 224 rent collections.

7. In view of the foregoing, the Motion alleging non-compliance with the Receiver Order is miscast. The Receiver Order, among other things, appointed the Receiver and directed a turnover of various deliverables. In point of fact, however, the Receiver Order did not require a turnover of accumulated cash funds received for periods prior to January 31, 2024. It provided instead for a turnover of funds collected by the Borrowers after the entry of the Order (*i.e.*, February 1, 2024 forward).

8. To this effect, the Receiver Order at the fourth decretal paragraph provides in relevant part:

> It is further ORDERED that by February 5, 2024, Borrower Defendants shall turn over to Trigild all leases, rent rolls, security deposits of tenants of the Properties, and any and all documents, records, service contracts, surveys, plans, specifications, and agreements relating to the management of the Properties held by Borrower Defendants, together with any and all monies held or received by Borrower Defendants in connection with the Properties during the period commencing with the date of this Order to and including the date upon which Trigild files with the Clerk of Court his or her bond as set forth below, except for those monies disbursed by Borrower Defendants during said period for the operation of the Properties; and thereupon Trigild shall hold such security subject

to such disposition therefor that shall be provided in an order of this Court to be made and entered in this action. (emphasis added)

9. Promptly upon entry of the Receiver Order, the Borrowers complied with their turnover obligations and made a comprehensive exchange of required deliveries, including a turnover of two security deposits and post-February 1 rent collections for all properties with the exception of security deposits relating to the buildings at 66/72 East 190th Street as noted on Exhibit "A". These two buildings were acquired approximately two years ago without receipt of any security deposits from the prior owner. Instead, the Borrowers there received a credit in the respective sums of $17,363.65 and $36,252.79. Additionally, at the closing, the Plaintiff established a separate reserve for these two buildings in the sum of $232,121.36. Accordingly, the Borrowers are not in possession of actual securities to be turned over.

10. While the Borrowers have been responsive to the Receiver's requests (as highlighted by the email exchange annexed hereto as Exhibit "B"), the Borrowers also understand that the Receiver Order can be modified by the Court to include disposition of the accumulated cash reserves generated during the periods prior to February 1, 2024. The Borrowers will, of course, honor any and all new directives issued by the Court regarding the turnover of accumulated cash.

11. In determining the proper amounts to be remitted, it is important to take into account that some of this cash is the remnant of the Borrowers' prior SBA loans under Covid 19 relief provisions, particularly with respect to the property at 503 W. 169th Street. The SBA provided Covid relief loans to many of the Borrowers which were loaned to the management company (City Skyline) to help pay expenses and debt service during parts of the pandemic. A copy of the SBA note for the building at 503 W. 169th Street relating to a loan in the sum of $433,200 is attached hereto as Exhibit "C". The SBA loan agreement contains certain lien rights;

and while the SBA loan proceeds were deposited into the main operating account and became comingled with other rents, the account for 503 W. 169th Street never fell below the amount of the SBA loan of $433,200 and currently aggregates slightly more than $465,000, even with the prior remittances to the Receiver.

12. While the Borrowers will be guided by whatever ruling is made by the Court, a fair and reasonable allocation should be made with respect to SBA-related obligations. The SBA should not be excluded from consideration and historically constituted an important funding source

13. The Borrowers propose that 25% percent of the available cash be set aside in reserve for payments to the SBA. Even with reserves for the SBA, the Receiver will still have sufficient funds to pay all outstanding utility bills and maintain a cushion for future operations.

Dated: New York, NY
      March 11, 2024

_____
Douglas Peterson