UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br>Plaintiff,<br>v.<br>2120 TIEBOUT LLC et al.,<br>Defendants. | 23 Civ. 9445 (DEH)<br>**MEMORANDUM OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court is a motion for deficiency judgment filed by Plaintiff Federal National Mortgage Association ("Fannie Mae") in this mortgage foreclosure action. ECF No. 128. In essence, Fannie Mae foreclosed on a property and then bought it at auction for less than the outstanding balance on the mortgage; it now seeks the difference between the purchase price of the property and the balance on the mortgage from the guarantors on the loan.

The facts and procedural background of this case are set forth in the Court's Order and Opinion granting Fannie Mae's Motion for Summary Judgment, ECF No. 100 (the "Summary Judgment Opinion"), familiarity with which is presumed. A Judgment of Foreclosure and Sale was entered on January 21, 2026. ECF No. 123. Fannie Mae now moves for an Order (1) ratifying and confirming the Referee's Report of Sale and making absolute and binding forever the sale therein mentioned; (2) pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") § 1371(1), granting and directing the Clerk of this Court to enter a deficiency judgment in favor of Plaintiff and against defendants 148th Street LLC, Douglas Peterson, Maurice Arlos, and Michael Fordham, and (3) granting such other relief as this Court deems just and proper, as reflected in the form of the proposed order at ECF No. 128-1. For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

As noted, the facts of and procedural background of this case are set forth in detail in the Court's Summary Judgment Opinion. Briefly, this case involved the foreclosure of ten mortgage loans secured by ten properties. All ten properties were sold at foreclosure pursuant to the Court's Judgment. *See* J. of Foreclosure and Sale; Report of Sale, ECF Nos. 130-5 and 130-6. This motion seeks, *inter alia*, confirmation of the Referee's Report of Sale and a deficiency judgment with respect to the mortgage loan on the property at 522 West 148th St (the "Property"). The total amount of the indebtedness of Fannie Mae's mortgage loan secured by the Property is $8,783,547.74. Report of Sale ¶ 6(e). But at foreclosure, the Property sold for only $4.4 million, leaving a deficiency of $4,383,547.74. *Id.* ¶ 7(e).

On July 6, 2026, Fannie Mae moved for various forms of relief, including entry of a deficiency judgment. ECF No. 128. The Court set a response deadline of July 10, 2026. ECF No. 133. On July 9, 2026, one day before their response was due, counsel for Defendants, including Guarantors Maurice Arlos, Douglas Peterson, and Michael Fordham (collectively, "the Guarantors"), filed a request for an extension of time to respond until July 13, 2026. ECF No. 134. The Guarantors then filed a "limited opposition" to Fannie Mae's motion in the form of a declaration by Mr. Arlos. First Arlos Decl., ECF No. 136. The Court granted a request for additional time to oppose until July 14, 2026, ECF No. 137; Mr. Arlos filed a supplemental declaration in opposition on that date, Second Arlos Decl., ECF No. 138. On July 20, 2026, Fannie Mae filed a Reply. Pl.'s Reply. ECF No. 139.

## DISCUSSION

As an initial matter, there is no opposition to Fannie Mae's request for an Order ratifying and confirming the Referee's Report of Sale and making the sale as reflected therein absolute and

binding forever. Having reviewed the Referee's Report of Sale and Fannie Mae's motion, the Court concludes that this relief is appropriate and grants it.

The issue in dispute on this motion is whether entry of a deficiency judgment against the Guarantors is appropriate. RPAPL § 1371(2) "permits the mortgagee in a mortgage foreclosure action to recover a deficiency judgment for the difference between the amount of indebtedness on the mortgage and either the auction price at the foreclosure sale or the fair market value of the property, whichever is higher." *N.Y. Com. Bank v. 18 RVC, LLC*, 103 N.Y.S.3d 596, 598 (App. Div. 2d Dep't 2019) (citations omitted). In making that calculation, "the court . . . shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date such premises were bid [o]n at auction or such nearest earlier date as there shall have been any market value thereof." RPAPL § 1371(2).

Here, the Guarantors do not dispute that Fannie Mae has met all of the legal requirements necessary for the entry of a deficiency judgment. First, Fannie Mae timely moved for a deficiency judgment on July 6, 2026, which is within the 90-day deadline from sale and delivery of the deed under RPAPL § 1371, *see* Chapman Decl. ¶¶ 12, 13, 17, ECF No. 130 (property sold and deed delivered on April 8, 2026); and properly served the Defendants, *see* Pl.'s Mem. in Supp. of Mot. to Confirm Report of Sale and for Deficiency J. at 8, ECF No. 129 (citing exhibits). Second, the property was sold for fair market value. *See* Gollotti Decl. ¶¶ 2-9, ECF No. 132 (describing appraisal arriving at market value of $4,400,000). And third, a deficiency exists. *See* Report of Sale ¶ 7(e) (deficiency of $4,383,547.74). The only question is whether the Guarantors are properly liable for the deficiency. On review of the relevant documents, the Court concludes that they are.

First, Defendant 148th Street LLC is personally liable for the full amount of the mortgage on the property, which, after the foreclosure sale, is in the amount of $4,383,547.74. On or about

December 27, 2019, 148th Street LLC, as borrower, entered into a loan agreement (the "Loan Agreement") in which it agreed that it would be personally liable to the lender for the repayment of all of the indebtedness upon the occurrence of "a Transfer . . . that is not permitted under this Loan Agreement or any other Loan Document." *See* Sogga Decl. ¶ 6, ECF No. 131 (citations omitted); Loan Agreement § 3.02(b)(2), ECF No. 131-1 at 18. Under the Loan Agreement, a Transfer includes "creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary, or by operation of law)." Loan Agreement, Schedule 1 at 16, ECF No. 131-1 at 115. Such a transfer occurred here, in the form of a subordinate mortgage on the property that was issued in 2008, recorded in 2023, and discharged in 2024 (the "Junior Mortgage"). *See* First Arlos Decl. ¶¶ 3-5.

Second, the Guarantors are, in turn, liable for the deficiency amount. On or about December 27, 2019, the Guarantors executed a Guaranty of Non-Recourse Obligations (the "Guaranty"). ECF No. 131-3. Pursuant to Section 3 of the Guaranty, each Guarantor unconditionally and irrevocably guaranteed full payment of "all amounts, obligations, and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement." *Id.* § 3. The Guarantors are therefore liable for the full amount of the Mortgage. *See 358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, No. 21 Civ. 168, 2023 WL 2969297, at *6 (E.D.N.Y. Mar. 1, 2023) (quoting *Letchworth Realty, LLC v. LLHC Realty, LLC*, No. 15 Civ. 6680, 2020 WL 5361666, at *3 (W.D.N.Y. Sept. 8, 2020)) (A guaranty "'is appropriately enforced in the foreclosure action when the deficiency judgment is sought following the sale,' and by naming [the guarantor] in this action, Plaintiff has preserved its right to seek a deficiency judgment against [the guarantor] after the foreclosure sale.").

In their Opposition filings, the Guarantors raise several points. First, they seem to argue that they cannot be liable for a deficiency because they did not authorize the recording of the Junior

Mortgage. *See* First Arlos Decl. ¶ 9 (stating that there are "issues of fact . . . surrounding the unauthorized filing of the mortgage"). But the Guarantors make no effort to explain why their consent to the recording of the Junior Mortgage would matter for purposes of triggering personal liability under the Loan Agreement or the Guaranty. Neither agreement makes consent to a transfer a precondition for triggering personal liability. In fact, the Loan Agreement states that personal liability is triggered by any covered transfer "whether voluntary, involuntary, or by operation of law." Loan Agreement § 11.02(a), ECF No. 131-1 at 56.

Second, the Guarantors argue that Fannie Mae has not "suffered any damages or adverse consequences as a result of the subordinate mortgage," which "did not impact anything in connection with the foreclosure sale." Second Arlos Decl. ¶ 3. The Guarantors emphasize that the Junior Mortgage was eventually discharged to what they claim was Fannie Mae's apparent satisfaction. *See* First Arlos Decl. ¶ 8. But the Guarantors do not cite any language in the Loan Agreement or the Guaranty, or any case law, to support their position. The Loan Agreement by its plain terms indicates that personal liability on the Loan is triggered upon a transfer not permitted by the Agreement; that happened here when the Junior Mortgage was recorded. While the foreclosure sale may not have been directly affected by the Junior Mortgage, Fannie Mae notes that the Borrower—by not recording the Junior Mortgage at the time that the Loan Agreement was entered into—"successfully avoided the detection of this secured debt [*i.e.*, the Junior Mortgage] at the origination of the loan." Pl.'s Reply at 3. And while the Guarantors state that Fannie Mae had previously indicated its satisfaction with resolution of the Junior Mortgage, they cite no evidence to support that assertion. Accordingly, the Court can find no reason not to enforce the personal liability provision of the Loan Agreement and the Guaranty according to their plain terms, and the Court grants Plaintiff's request for a deficiency judgment against the Guarantors. *See Greenfield* v. *Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) (citations omitted) ("[A] written

agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.").

As for interest, there is no dispute that, if the Guarantors are liable for a deficiency judgment, the amount of liability shall include both pre-judgment and post-judgment interest. To calculate the accrual of pre-judgment interest, courts "look to the source of the law underlying plaintiff's claims: claims that arise out of federal law are governed by federal rules, claims arising out of state law are governed by state rules." *In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014). This motion is made pursuant to RPAPL § 1371, so the calculation of pre-judgment interest due is to be governed by New York law. Under New York law, "when a contract provides for interest to be paid at a specified rate until the principal is paid, the contract rate of interest, rather than the legal rate set forth in CPLR 5004, governs until payment of the principal or until the contract is merged in a judgment." *NYCTL 1998-2 Tr. v. Wagner*, 876 N.Y.S.2d 522, 523 (App. Div. 2d Dep't 2009) (citations omitted). Here, the Loan Agreement specifies that following an "Event of Default," interest accrues at a default rate equal to 7.64%—the mortgage loan fixed interest rate of 3.64%, Loan Agreement, Schedule 2 at 4, ECF No. 131-1 at 119, plus four percentage points, *id.*, Schedule 1 at 3, ECF No. 131-1 at 102 (defining "Default Rate").

As for post-judgment interest, the Second Circuit has explained that in a diversity action like this one, "the calculation of post-judgment interest [must be done] in accordance with the federal rate provided for under 28 U.S.C. § 1961(a)." *FCS Advisors, Inc. v. Fair Fin. Co.*, 605 F.3d 144, 148 (2d Cir. 2010), *aff'd in part, vacated in part on other grounds*, 378 F. App'x 65 (2d Cir. 2010). The statutory rate shall be "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* at 145 n.1 (citing 28 U.S.C. § 1961(a)).

Post-judgment interest is therefore awarded at the statutory rate from the date the deficiency judgment is entered until it is paid in full.

**CONCLUSION**

For the reasons explained above, Fannie Mae's motion is **GRANTED.** A Judgment shall be entered separately.

The Clerk of Court is respectfully directed to terminate ECF No. 128.

SO ORDERED.

Dated: October 13, 2026
New York, New York

DALE E. HO
United States District Judge